IN ERROR.
........

ALBANY,
February, 1821.

SLEE
v.
BLOOM.

SAMUEL SLEE, *Appellant,*

*against*

GEORGE BLOOM, LEONARD DAVIS, ALBERT COCKS, DANIEL HOFFMAN, DANIEL COOLIDGE, DERICK B. STOCKHOLM, MARTIN HOFFMAN, CYRENUS CROSBY, ABIEL G. THOMPSON, JOHN NELSON, ELIZABETH TAPPEN, BENJAMIN H. CONKLIN, JAMES REYNOLDS, JOHN E. PELLS, ROBERT FORREST, PETER ACKERMAN, NATHAN MYERS, NATHANIEL FERRIS, GEORGE BOOTH, CATHARINE R. LIVINGSTON, SAMUEL S. HOWARD, and JEREMIAH WINTRINGHAM, *Respondents.*

*A corporation may be dissolved by a surrender of its corporate rights.*

*And if a corporation suffers acts to be done which destroy the end and object for which it was instituted, it is equivalent to a surrender of its rights.*

*In December, 1814, pursuant to the statute passed the 22d of March, 1811, relative to corporations for manufacturing*

ON appeal from the Court of Chancery.

The bill, filed the 24th of *April,* 1819, stated, that the appellant, being possessed of a piece of land on *Wappinger's Creek,* in *Poughkeepsie,* on which he had erected a cotton manufactory, with 912 spindles, and finding that the factory demanded greater funds than he could conveniently command, proposed to the respondent, *George Bloom,* and others, to unite with him in a corporation, to be called " *The Dutchess Cotton Manufactory,*" the stocks of which were to be divided into 600 shares of 100 dollars each. That this proposal being acceded to, the appellant, and *G. Bloom, J. Tallmadge, jun. Cyrenus Crosby, George Booth,* *purposes,* (sess. 34. ch. 67. 1 *N. R. L.* 345.) the respondents associated together for establishing a cotton manufactory, and became a corporation, according to the provisions of the statute, for twenty years. After *December,* 1817, there was no meeting of the trustees, nor any business, or act done by the corporation; and on the 1st of *February,* 1818, all the property of the corporation, real and personal, was sold by a sheriff under an execution. In *April,* 1819, the appellant, a creditor of the corporation, filed his bill against the respondents, to charge them, under the provision of the *seventh* section of the act, as individually responsible for the debts of the corporation, to the extent of their respective shares of stock, alleging that the corporation was to be considered as dissolved after the 1st of *February,* 1818 : *Held,* that the corporation, within the meaning and intent of the act, as regarded creditors, was dissolved, after ceasing to act as a corporation, for such a length of time, and after a sale of all its property ; and that the respondents were individually responsible for the debts of the corporation, according to the act.

A resolution or by-law of such a corporation allowing the stockholders, on paying *thirty per cent.* on their shares, to forfeit their stock, is void as against creditors : Where a creditor, who was a trustee of the corporation, openly protested against such resolution, though he accepted money raised under the resolution, and was present at a subsequent meeting when the application of the money was directed, to which he assented, *Held,* this was not a ratification by him of the by-law or resolution.

A resolution or by-law, that any stockholder, paying *fifty per cent.* on his shares, should be discharged from all future calls on his subscription, &c. other than proceeding by way of forfeiture, is valid, and those who complied with its terms before the dissolution of the corporation, were held to be discharged from all responsibility to the appellant.

and *Robert L. Reade,* signed and acknowledged a *certificate* of their desire to become a corporation, under that name, and filed the same in the secretary's office, and became duly incorporated, on the 12th of *December,* 1814, pursuant to the act of the legislature, passed the 22d of *March,* 1811, relative to incorporations for manufacturing purposes. (Sess. 34. ch. 67. 1 *N. R. L.* 245.) That the trustees named in the certificate of incorporation, met on the 24th of *January,* 1815, and chose their officers, to wit, the appellant, as president, *Crosby,* as treasurer, and *Reade,* as secretary ; and it was agreed that the treasurer and secretary should confer with the appellant, and report the terms on which he would sell the factory, stock, and machinery, to the company.

That, afterwards, in *February,* 1815, at a meeting of the trustees, a report was made by the treasurer, (the secretary being absent,) of the terms on which the appellant would sell the factory, with its stock and machinery ; the amount of the items, as reported, being 30,912 dollars ; that this report was unanimously accepted, and a subscription book opened, by which the subscribers promised to pay to the *Dutchess Cotton Manufactory,* 100 dollars, for every share set opposite their names. The bill set forth the names of the subscribers, and the number of shares subscribed by each. That at a meeting of the trustees, on the 7th of *March,* 1815, it was resolved, that a call of five dollars on each share should be made, payable on the 1st of *June* following. That the appellant, soon after, executed a deed to the company of his factory, stock, and machinery, for the consideration of 30,900 dollars, which deed was now held by the company. That on the 1st of *May,* 1815, the appellant received scrip for 122 shares of stock, which he paid in full, by deducting the same from the amount due to him from the company. That on the 30th of *September,* 1815, the appellant received scrip for fifty more shares, and paid up the same, in like manner. That at a meeting of the trustees, on the 20th of *September,* 1815, at which *Bloom, Crosby,* and others were present, a further call was made for 10 dollars on each share, payable on the 1st *Monday* of *November* then next, and the further sum of five dollars, on the first *Monday* of

IN ERROR.
.........
ALBANY,
February, 1822.

SLEE
v.
BLOOM.

*December* following. That at a meeting on the 25th of *January*, 1816, three persons were appointed a committee to inquire into the affairs of the corporation; that at a meeting of the stockholders, on the 20th of *April*, 1816, pursuant to public notice, seven trustees were elected. At a meeting held the 27th of *April*, 1816, it was resolved to make a public call of 25 dollars, on each share, payable on the 1st of *June* then next; that the stockholders generally neglected to make payment, and in *June*, 1816, it was resolved that suits should be commenced to enforce payment. At a meeting, *October* 19, 1816, it was resolved, that it was inexpedient to continue the factory in operation; and the appellant, who then superintended it, was directed to shut it up, discharge the workmen, and take care of the property; and a committee was appointed to examine the accounts, and settle with the appellant. That at a meeting in *November*, 1816, the committee appointed to liquidate the account of the appellant, reported a balance in his favour of 24,443 dollars and 35 cents; and it was resolved, that a proper voucher for the balance should be given to him. A bond to the appellant was, afterwards, executed, signed by the president, treasurer, and secretary, and sealed with the seal of the corporation, for 23,493 dollars and 35 cents, being the sum remaining due to him, after the stock subscribed by him, amounting to 17,200 dollars, paid up in full, was deducted from the sum due to him from the company. That the appellant having obtained a loan of the *Manhattan Company* of 10,000 dollars, which he expended in advances for the company, gave his note for that sum, dated the 1st of *December*, 1815, endorsed by *Bloom, Crosby, Booth*, and *Cocks*, payable in 12 months, and which sum went into his account, and made part of the balance found due to him. To secure his endorsers, the appellant gave them a bond, and warrant of attorney to confess judgment for 20,000 dollars, on which they entered up a judgment, on the 1st of *June*, 1816. That when the note became due, the appellant was unable to pay it, and the endorsers assumed the debt, and gave their own note to the bank for the amount, endorsed by *Nathan Myers*, and which note had been in part paid by moneys collected of the stockholders,

and in part by the appellant himself. That in *January*, 1817,   IN ERROR.
........
ALBANY,
February, 1822.
SLEE
v.
BLOOM.
the appellant, finding himself pressed by a judgment ob-
tained by some of the individuals of the company who had
been endorsers of his note, commenced a suit against the
company, on the bond given to him, on which a judgment
was confessed and perfected, in *May* term, 1817, with a
stay of execution until *October* term following, for the penal
sum of 46,986 dollars.   The bill then stated various meet-
ings of the subscribers in the year 1817, and their pro-
ceedings.   That on the 12th of *August*, 1817, at a meeting
of the trustees, it was resolved, that any person might trans-
fer his stock, and be discharged from any future calls, on
paying up the calls of fifty per cent. which had then been
made, and the costs ; and that no proceedings should be had
to enforce the payment of further calls, other than by way of
forfeiture.   That on the 3d of *November*, 1817, at a meeting
of the trustees, it was resolved to lease the factory for three
years, and that the stockholders might have the privilege of
forfeiting their stock to the company, by paying up *thirty*
per cent. on their shares, by the 1st of *December* following,
which resolution was opposed by the appellant.   That most
of the stockholders had availed themselves of this resolu-
tion, and wholly abandoned the factory, and every thing re-
lating to it, though they had not given up their scrip.   That
no election of trustees had been made since *April*, 1817,
and the stockholders had come to a resolution never to
make another election, but to abandon the factory and cor-
poration altogether.   That in *October*, 1817, *Crosby, Bloom,
Booth,* and *Cocks,* issued a *fieri facias* against the appellant
on the judgment against him, by virtue of which the real
estate of the appellant, worth 9,000 dollars, beside the
land and property at the factory, became liable to sale.   That
in *November*, 1817, the appellant, hearing that an execution
had been issued by *Bloom*, and the others, on the judgment
obtained by them against the company, caused a *fieri facias*
to be issued on the judgment in his favour.   That in *January*,
1818, the attorney of the company, pursuant to a previous
resolution of the trustees, applied all the funds in his hands,
amounting to 4,105 dollars and 59 cents, toward the pay-
ment of the note for 10,000 dollars, leaving a balance of

IN ERROR.
........
ALBANY,
February, 1822.

SLEE
v.
BLOOM.

6,538 dollars and 58 cents. That to prevent a sacrifice of his property, to pay that balance, the appellant procured *George B. Evertson* to become security to the bank for that amount, and, thereupon, the appellant's note for 10,000 dollars was given up, and his endorsers wholly discharged. That to secure *Evertson*, the appellant, on the 21st of *January*, 1818, assigned to him all his real estate, and the avails of all the property of the company, that might be sold under his execution against the company. Under the execution on his judgment, the real estate of the company was sold, by the sheriff, in *February*, 1818, for 102 dollars, and the personal estate for 385 dollars and 50 cents, to *George B. Evertson*, as the highest bidder ; and after deducting the sheriff's fees, there remained the sum of 460 dollars and 18 cents, to be applied on the appellant's execution. That no payment had been made on the judgment, unless the sum of 4,105 dollars, applied in part payment of the note for 10,000 dollars, be considered as part payment of the judgment; and that if it is so considered, there will then be a balance due to the appellant of 18,958 dollars and 37 cents, which he has no means of obtaining, unless the stockholders are compelled to pay up their subscriptions. That there has been no meeting of the stockholders since *May*, 1817, nor have the trustees had any meeting, or transacted any business, since *December*, 1817 ; but have determined to abandon, and give up the factory and corporation, and not to make any further calls on the stockholders, nor to provide any means whatever to pay the appellant ; but the trustees, with all the other respondents, have determined to suffer, and cause the corporation to be dissolved, and had already suffered and caused the same to be dissolved, by their said transactions and omissions, in relation thereto. That the books and records of the corporation are in the power or possession of the respondents. That there is no debt due by the corporation, except that owing to the appellant. That he had no means of ascertaining what amount of his debt could be obtained of the corporation, except by a legal sale of their property on execution ; and although it was sold at a sacrifice, yet the appellant was unable, owing to his embarrassment, &c. to bid upon it, or to cause it to be sold for

a greater sum, and the trustees and stockholders, though they had notice of the sale, neglected all attention to it; nor did they show any disposition to preserve the property, or keep the corporation in existence, &c. The bill *prayed* that those of the respondents who had made any payments on their stock, might set forth the same, and that the solvent stockholders, to wit, all the respondents, (except *Crosby*,) might be severally decreed to pay to the appellant, for his benefit, such sum, or balance, on each and every share of stock subscribed by them, as should be sufficient, with a due proportion to be allowed by the appellant on the fifty shares purchased by him of *James Tallmadge, jun. Aaron Stafford*, and *Robert Stafford*, to pay to the appellant the debt due to him from the said *Dutchess Cotton Manufactory*, with interest, and to indemnify him for the losses he has sustained by the unjust and oppressive conduct of the trustees, and the stockholders, and that it might be left with the solvent respondents, and *E. Crosby*, to arrange and adjust among themselves, any claims they may have on him, by reason of any balance that may remain due and unpaid on the stock subscribed by him; and that the appellant might have such other and further relief, by a decree against the respondents in their individual capacities, or as members of the said corporation, if they pretend that the same has not been already dissolved, as the nature of his case might require.

The respondents, *Bloom, Crosby, Cocks, Coolidge, Stockholm, Davis, Nelson, Thompson, Tappen, M. Hoffman, Reynolds, D. Hoffman*, and *Conklin*, appeared and filed their answers. The respondent, *Bloom*, admitted most of the material facts stated in the bill. He charged, that the appellant induced him, and the other respondents, to enter into the association for the purchase of the cotton factory, by urgent solicitations, artful assurances, and exaggerated statements of the value, profits, &c. That among other inducements, he assured the respondent, that if he would take shares, and aid in procuring the incorporation of the company, he, the appellant, would, at any time, when the respondent wished to relinquish his shares, take back the stock, and become responsible with good security, for what

IN ERROR.
........

ALBANY,
February, 1822.

SLEE
v.
BLOOM.

IN ERROR.
........
ALBANY,
February, 1822.

SLEE
v.
BLOOM.

moneys the respondent might advance, payable in two years, and for any further calls on the stock. That the appellant's object in prosecuting the suit on the bond to judgment and execution, and having the property sold, was to regain the factory and machinery, and draw from the stockholders their subscriptions for the payment of his debts. That *Evertson* purchased the property for the benefit of the appellant, who was, in fact, the real owner, subject only, by way of security to *Evertson*, for the sum he had assumed to pay the *Manhattan Bank*. He denied that the books and papers had been withheld from the appellant; and alleged, that they were in his possession.

The other respondents, in their several answers, referred themselves to the answer of *Bloom*, as containing, according to their knowledge, recollection, and belief, the truth as to the several matters stated, and alleged by him, and they set up particular grounds of defence as regarded each of them, separately. The respondent, *Pells*, put in a separate answer, admitting the material facts in the bill, except as to the amount paid on the stock purchased by him. The bill was taken *pro confesso* against the respondents, *Robert Forrest, Nathan Myers, Nathaniel Ferris, George Booth, S. Howard, Wintringham, P. Ackerman*, and *C. R. Livingston;* but it was stipulated by the appellant, as to the two last named respondents, that he would not take a final decree against them, provided they would severally pay on their shares a due proportion according as others, under like circumstances with them, and who had put in their answers, might be compelled to pay. It was admitted, that *C. R. Livingston*, having paid 30 per cent. on her stock, had transferred it to the company; but that *Ackerman* had not paid any thing on his stock, nor had he transferred it.

Replications were filed to the answers put in, and proofs taken in the cause.

The cause was brought to a hearing upon the pleadings and proofs, in *April*, 1821 ; and on the 19th of *July*, the Chancellor made the following decree: " It is declared, that the plaintiff has not shown any right or title to sue the defendants, as members or stockholders of the *Dutchess*

IN ERROR:
........
ALBANY,
February, 1822.

SLEE
v.
BLOOM.

*Cotton Manufactory.* for a debt due to him from the said corporation, inasmuch as the said corporation does not appear, in judgment of law, dissolved, nor can it be dissolved within the period limited by the statute under which it was erected, for any non-user or mis-user of its franchises, without due process of law; and it is further declared, that assuming the said corporation to be dissolved, the plaintiff would not be entitled to the assistance of this Court, as against the individual persons and property of those defendants, who have paid into the corporation, at the rate of *thirty per cent.* upon their respective shares; inasmuch as by the resolution of the board of trustees of the 16th of *August,* 1817, to which the plaintiff was a party, as a trustee, and by the resolution of the said board of the third day of *November,* 1817, to which the plaintiff, as a trustee, by repeated acts, gave his subsequent assent and ratification, the plaintiff has, in justice and equity, barred himself from the operation of any further claim, unless it be to exact the forfeiture of their shares; nor would he be entitled to the assistance of this Court as against the individual persons and property of those defendants who have not paid in, at the rate of thirty per cent., except it might be to require them to pay in, upon their shares at the rate of fifty per cent. on the amount of arrearages of former calls, prior to the 18th of *August,* 1817, and to exact a forfeiture of their shares for the residue. It is, therefore, ORDERED, ADJUDGED, and DECREED, &c. that the plaintiff's bill be dismissed without costs, as to those defendants who have not appeared, but with costs, as to those defendants who have appeared and answered, to be taxed, and to be recovered by them against the plaintiff, according to the course and practice of this Court."

THE CHANCELLOR assigned his reasons for this decree, which were the same as those expressed in the opinion delivered by him in the Court of Chancery. (*Vide* 5 *Johns. Ch. Rep.*)

*P. Ruggles,* and *T. A. Emmet,* for the appellant. They stated the following points:

IN ERROR.
........
ALBANY,
February, 1822.

SLEE
v.
BLOOM.

1. The *Dutchess Cotton Manufactory* was legally incorporated on the 5th of *December*, 1814, according to the act of the 22d of *March*, 1811, (1 *N. R. L.* 245, 246, and 247.) with a capital of 60,000 dollars, divided into 600 shares of 100 dollars each. The defendants all subscribed for stock, and received scrip, by which they became members of the corporation, and respectively interested in all the property belonging to the same, and liable to the extent of their stock, for all debts due from the corporation, by calls during its existence, or, by the 7th section of said act, after its dissolution.

2. The plaintiff is a judgment creditor to a large amount. His judgment remains unsatisfied and in full force, and he is the only remaining creditor.

3. The corporation has been dissolved by the acts, consent, and determination of the defendants, and they remain liable to respond to the plaintiff, as a creditor of the company, to the extent of their respective subscriptions, according to the seventh section of the aforesaid act.

Under this point it is insisted,

*First ;* that the corporation, though created under the statute, was a mere personal association, formed by consent of the several individuals composing it, and liable to be dissolved in the same manner.

*Second ;* that the assent of the defendants to such dissolution fully appears from the pleadings, in which the plaintiff has alleged that such dissolution has taken place by the determination and acts of the defendants, and which none of them have denied ; and that the assent and determination of the defendants to abandon the factory, and cause the corporation to be dissolved, also appear from the several acts done by the stockholders and trustees, with respect to passing the resolution of the 3d of *November*, 1817, and by their subsequent acts, in relation to the factory, before the 1st of *January*, 1818, and their abandoning it since ; and that the same facts are also proved, by the testimony of *John E. Pells, Robert Forrest, James Tallmadge, jun.,* and *Nathan Myers,* in their answers to the 12th direct interrogatory on the part of the plaintiff, and by *Cyrenus Crosby's* answer.

IN ERROR.
........
ALBANY,
February. 1822.

SLEE
v.
BLOOM.

*Third;* if the facts alleged and proved by the plaintiff, and admitted by the defendants, are true, there is no semblance of a corporation remaining, on which a *quo warranto,* or any other process, could be served, or made to operate.

*Fourth;* a *quo warranto* does not dissolve a corporation, and is only necessary where those against whom it is filed are exercising their corporate franchises without right, and not when every exercise of that kind is abandoned, and has ceased, and where there is no appearance of any corporation remaining. When such is the case, and the individual members are charged on the ground that the corporation is dissolved, which they do not deny, the Court will not be astute to make out the continuance of a corporation, which they do not claim or allege, in their answer, to be in existence.

*Fifth;* the members of the corporation, who, as his Honour the Chancellor remarked, are the integral part of it, are not, according to the pleadings and proofs, *in esse,* as members, and so no new election of trustees could now be made.

4. The plaintiff is not restricted in his recovery against any of the stockholders, to 50 per cent. on their stock, by his assenting, as one of the trustees, to the resolution of the 19th of *August,* 1817. For considering that resolution, as the Chancellor appears to consider it, as a contract between the plaintiff and the stockholders, it has not been performed by any of them, at such time, and in such manner, as to entitle them to the benefit of it; and the stockholders being previously liable to pay to the full amount of their stock, in discharge of the debts of the company, such pretended contract was without consideration, and void; nor does it appear, that *James Reynolds* and *Martin Hoffman,* who claim to have paid that proportion, did the same, in reference to the resolution, or that they ever transferred their stock.

5. The resolution of the 3d of *November,* 1817, authorizing the stockholders to forfeit their stock upon the payment of 30 per cent. was not warranted by the act under which the corporation was formed, nor by any previous bylaw of the company, nor by any other law; but, as to the

SLEE
v.
BLOOM.

plaintiff, or any other creditor of the company, was utterly void, and could never exempt the stockholders, who attempted to discharge themselves under it, from their liability to pay the debts of the company; for

*First;* the resolution was passed without the assent of the plaintiff, and against his earnest remonstrances, after being under consideration at several meetings before it was passed.

*Second;* the plaintiff's protest against the resolution, was made publickly to the trustees, the agents of the stockholders, at the time it was passed, and was recorded on the minutes of the company; and every stockholder who would avail himself of the resolution, and the acts of the trustees respecting it, must be considered as having full knowledge of the plaintiff's protest against it.

*Third;* the resolution was passed at the procurement and instigation of the stockholders who were not trustees, and for the purpose of discharging themselves from the payment of their several proportions of the plaintiff's demand, and with the intention of leaving him without the possibility of obtaining payment, and the calls which had been made for 50 per cent. were accordingly reduced to 30.

*Fourth;* the plaintiff did no act, after the resolution of the 3d of *November,* 1817, was passed, to give sanction to it, or to waive any right he had against the stockholders; and none of the stockholders who have transferred or forfeited their stock, could have been induced to do the same, from a belief that the plaintiff acquiesced in the resolution, as all the acts by which he is supposed to have waived his rights, took place after such transfer and forfeiture.

6. All charges of fraud against the plaintiff, and all the material allegations contained in the answers of the defendants, and on which they appear to rely, are disproved; and the answers are so far discredited by the testimony, that no part thereof, or of the depositions of the defendants, ought to be considered as evidence of any weight.

7. The pretended engagement of the plaintiff to receive the stock of the several subscribers, at their election,

is not proved; and it appears, by the statements of the de- <span style="float:right">IN ERROR.</span>
fendants, to be nothing more than an expression of his wil-
lingness to hold the whole of the stock, if able, or when he <span style="float:right">ALBANY, February, 1822.</span>
should be able, as he expressly stated to some of the de-
fendants, according to their own relation of the facts. <span style="float:right">SLEE v. BLOOM.</span>

8. If, at the time the defendants respectively subscribed, the plaintiff engaged to take their stock so subscribed at their option, as they all pretend, such engagements were without consideration, and void, and the subscribers making no agreement to give up their stock and interest in the corporation, there was no mutuality in such contract.

9. If such pretended agreement by the plaintiff to take the stock of the several subscribers could, under any circumstances, have had any legal effect, it could never become binding till such of the defendants as claimed the benefit of it, had offered to give up their interest in the corporation to the plaintiff, which none of them have done at such time, or in such manner, as to render it obligatory on him to take it.

10. The allegations of fraud in selling the property to the company, which was incumbered, is wholly unfounded, as the state of the property sold was well known to the company, and especially to the trustees, at the time of the sale; and the company was frequently requested to discharge the incumbrance, and deduct the amount from the plaintiff's debt.

11. The account of the plaintiff's has been settled by the immediate agents of the company, and a bond given for the balance, and a judgment rendered thereon; and it is not now to be opened for further examination, and especially in a court other than that in which the judgment was rendered; and from the statement it appears that the settlement was justly and fairly made.

12. The property of the company having been sold under a legal execution, with the knowledge of the defendants, the plaintiff would be under no obligations to allow the company more than the same sold for, if he had purchased the property for his own use, and had the possession of it. But much more so, when the acts of the defendants have

IN ERROR.
........
ALBANY,
February, 1822.

SLEE
v.
BLOOM.

driven him to the necessity of giving the control of his execution to another person, under whose direction the sale was made.

13. The defendants ought to make payment to the plaintiff, and if any benefit is to be derived from a redemption of the property from *G. B. Evertson,* they ought to be substituted in the place of the plaintiff, and permitted to redeem the property for their own benefit, they permitting the plaintiff to join with them in doing it, as he, having paid up his stock in full, would be entitled to the benefit of such redemption with them.

14. The subject of this suit is peculiarly proper for the jurisdiction and power of a Court of Chancery; and the plaintiff could not have adequate remedy at law.

*First;* because it is necessary that all the defendants should be before the Court, for the amount to be paid by any one defendant could not be ascertained without ascertaining and settling the amount to be paid by each and every of the others; and no such adjustment could be made at law.

*Second;* a Court of Chancery can do more complete justice in the cause than a Court of law, and particularly by substituting the defendants in the place of the plaintiff, to redeem the property from *G. B. Evertson.*

*Third;* if suits at law might be maintained, a proceeding in Chancery prevents a multiplicity of suits, which is a proper ground of Chancery jurisdiction.

*Fourth;* it is too late to object to the jurisdiction of the Court, on the ground that there is remedy at law, after an answer is put in, and the cause is brought to hearing on the merits.

*Fifth;* in this case, an individual is seeking redress against others, in their individual capacities, and the leading features in the case bear no relation, in fact or principle, to the cases mentioned by the Chancellor, in which he says that there can be only remedy at law.

15. If the corporation should be considered as still having a technical existence, which is the only existence, if any, that it can have, yet the defendants claim that they have ceased to be members of it; and although the

IN ERROR.
........

ALBANY,
February, 1822.

SLEE
v.
BLOOM.

plaintiff insists that they have separated themselves from the corporation, in a manner fraudulent as to him, and not warranted by law or justice, and that they still remain liable in equity, to pay him their several proportions in discharge of his debt, yet as they have elected to be considered separate from the corporation, they cannot now object that he has proceeded against them in their individual capacities.

16. But if it should be urged, that the proceedings in this suit ought to have been against the corporation by name, to compel the trustees to make calls for the payment of the plaintiff's debt, it will be seen that such proceedings would be wholly useless and ineffectual, for that all persons being now before the Court, who would, in such case, be made parties, and their respective relations particularly stated, it is competent for the Court to grant the same relief in this case, under the prayer in the bill for that purpose, as if the corporation had been made nominally a party to this suit.

17. While the defendants were stockholders, they, by their agents, the trustees, and a committee appointed to make a settlement of the plaintiff's accounts, received from the plaintiff 100 per cent. on all his stock for the use and benefit of the company, by which they became, in equity and justice, respectively bound to advance in the same proportion on their own stock, if the same should be required for the payment and discharge of the plaintiff's claim against the company, but which duty they have never performed.

18. The depositions of the defendants ought not to have been admitted in evidence before the Chancellor, and ought not now to be considered as legal proof in the cause, but ought to be wholly rejected.

They cited the following authorities : 3 *Term Rep.* 199. 214. 2 *Kyd on Corporations,* 467, 468. 12 *Mod.* 19. 1 *Shower's Rep.* 180. S. C. 3 *Term Rep.* 215. 2 *Kyd on Corp.* 273.

*T. J. Oakley,* for the respondents, contended that the decree ought to be affirmed, for the following reasons :

IN ERROR.
···· ···

ALBANY,
February, 1821.

SLEE
v.
BLOOM.

1. Because, the corporation, styled " *The Dutchess Cotton Manufactory*," was not, *in point of law*, dissolved on the 1st *day of December*, 1817, or at any time previous to the commencement of the appellant's suit in the Court of Chancery.

(1.) It could not be dissolved, except *by lapse of time*, or by a *regular judicial process*.

(2.) By the true construction of the act under which the corporation was created, the dissolution thereby contemplated *was intended to be a dissolution by a lapse of time only*.

2. Because, *in point of fact*, the said corporation was not dissolved on the 1st *day of December*, 1817, or at any time previous to the commencement of the appellant's suit.

(1.) All the trustees, chosen in *May*, 1817, *including the appellant himself*, continued to be stockholders until the 1st day of *December* in that year ; and, in fact, still continue stockholders, never having devested themselves of their stock, or in any manner relinquished their corporate rights.

(2.) All the original stockholders (except such as had transferred their stock) were, on the said 1st day of *December*, 1817, integral parts of the said corporation, and so continued, and were in full possession of their corporate rights.

(3.) The stockholders thus continuing possessed of their stock, and their corporate rights, constituted, *in point of numbers*, a large majority of the whole, and owned among them *more than two thirds of all the stock*.

(4.) The omission to elect new trustees in 1818, did not, on general principles of law, dissolve the corporation, and such omission, *by the express terms of the act* under which the corporation was created, is declared not to work any such dissolution.

(5.) The discontinuance of the ordinary business of the corporation, or the sale of the property of the corporation by the sheriff, did not work a dissolution of it, as such business might at any time be resumed ; and

IN ERROR.
........
ALBANY,
February, 1822.

SLEE
v.
BLOOM.

the trustees of the said corporation, (*of whom the appellant was one,*) by several formal resolutions, to wit, of the 3d and 11th of *November,* 1817, having determined to rent the factory for a term of years, thereby distinctly recognized the existence and continuance of the corporation during such term, notwithstanding the discontinuance of the business of manufacturing, by the corporation itself.

(6.) The declaration of any of the individual stockholders, that they had abandoned the corporation, could not work a dissolution of it, or, in any manner, affect the corporate rights of the company. If any declaration, under any circumstances, could produce that effect, it must be the act of the trustees in their corporate capacity.

(7.) The trustees of the company have not only made no such declaration, but they have, by repeated resolutions, in effect, declared the contrary : 1st. By the aforesaid resolutions of the 3d and 11th of *November,* 1817; and, 2d. By the resolutions of the 1st, 26th, and 31st of *December,* 1817, all of which were adopted with the *consent, and for the benefit of the appellant*—and clearly prove, that the corporation continued *to act as such,* after the period at which many of the respondents had transferred their stock, and ceased to be members of the company.

(8.) There is no obstacle to any future meeting of the last elected trustees, (of whom the appellant is one,) and no difficulty in their compelling payment from such members of the company as still continue stockholders—and the remedy of the appellant, in case of the refusal of the trustees to act, in the premises, was either in Chancery against the trustees, as a corporation, to compel them to proceed in the performance of their duty, or by a judicial process at law, to dissolve the corporation for a non-user or mis-user of its franchises.

(9 ) The corporation, not being dissolved, either in law, or in fact, the appellant can have no remedy against

IN ERROR.
........

ALBANY,
February, 1822.

SLEE
v.
BLOOM.

the individual members of it, for any debt due to him from the corporation.

3. But, in case the corporation should be adjudged to be dissolved, the respondents contend,

(1.) That those of the respondents who have complied with the resolution of the 3d of *November*, 1817, are thereby discharged from any further liability to the appellant.

(2.) That all the respondents are protected from any contribution beyond the amount of 50 per cent. on their shares, by virtue of the resolutions of the 19th of *October*, 1816, and of the 18th of *August*, 1817; and those of the respondents who have paid to the amount of 50 per cent. (to wit, *Martin Hoffman* and *James Reynolds*, who have paid to that amount; and *Crosby* and *Cocks*, who claim to have made advances to, and for the appellant, to more than that amount) are, in any event, not liable to any further contribution.

4. If any of the respondents are held liable to contribution, they ought not to be concluded by the settlement, made by the trustees with the appellant; as he seeks to make them *individually* liable, he ought not to be permitted to bind them in equity, by the act of the trustees in the settlement, and the more especially in this case, as the settlement was grossly erroneous, and made under circumstances giving rise to a strong presumption of fraud.

5. If contribution should be decreed against any of the respondents, the appellant ought to be held to account, and give credit, for the actual value of the real and personal property purchased at the sheriff's sale by *George B. Evertson*—such purchase being for the appellant's benefit, and now subject to a right of redemption by him.

6. If contribution is decreed against any, the shares of those who may have become insolvent, ought to be taken into the account.

7. The real estate conveyed to the corporation by the appellant, being heavily incumbered by him at the time of the conveyance, and he being insolvent, the respondents

IN ERROR.
........

ALBANY,
February, 1822.

SLEE
v.
BLOOM.

cannot be bound, in equity, to pay the purchase money to him, until the incumbrances are removed.

8. The fraudulent representations made by the appellant to induce many of the respondents to become subscribers to the stock, and the fraud committed by him in charging the property to the company at a much higher rate than it cost him, contrary to his agreement, ought to preclude him, in equity, from claiming contribution from the respondents.

9. Such of the respondents as subscribed under a promise by the appellant, that he would take the stock off their hands, must be considered, at their election, as holding the same as mere trustees for him, and are not, therefore, bound in equity, to make contribution to him.

10. If contribution is decreed against any of the respondents who claim to have open accounts with the appellant, an account ought to be directed, to be stated between them individually and the appellant.

He cited the following authorities : 2 *Kyd on Corp.* 407. 447. 465. 472. 2 *Bac. Abr.* 31. tit. *Corporation*, G. *note.* 3 *Co.* 73. 8 *Mod.* 358. 4 *Comyn's Dig.* 263. tit. *Franchise*, F 20. 80. 1 *Str.* 625. 9 *Johns. Rep.* 158. *Yelv.* 190. 2 *Kyd*, 515, 516. 3 *Burr.* 1819. 1 *Bl. Comm.* 485. 2 *Kyd*, 509. and *note.* 5 *Mass. Rep.* 230. 2 *Johns. Ch. Rep.* 389.

SPENCER, Ch. J. (after stating the facts in the case.) With the most profound and undissembled respect for the Chancellor, I am constrained to differ from the opinion held by him, that this corporation is not dissolved.

The object and intention of the legislature in authorizing the association of individuals for manufacturing purposes, was, in effect, to facilitate the formation of partnerships, without the risks ordinarily attending them, and to encourage internal manufactures. There is nothing of an exclusive nature in the statute ; but the benefits from associating and becoming incorporated, for the purposes held out in the act, are offered to all who will conform to its requisitions. There are no franchises or privileges which are not common to the whole community. In this respect, incorporations

IN ERROR.
........
ALBANY,
February, 1822.

SIKE
v.
BLOOM.

under the statute differ from corporations, to whom some exclusive or peculiar privileges are granted. The only advantages of an incorporation under the statute over partnerships, and the only substantial difference between them, consists in a capacity to manage the affairs of the institution, by a few and select agents, and by an exoneration from any responsibility beyond the amount of the individual subscriptions.

In coming to the conclusion, that the corporation, in this case, is dissolved, I lay out of the case every thing of misuser, or non-user, excepting the influence which the fact of non-user may have as evidence, connected with other facts, to show the renunciation of the corporate rights. Upon the authorities, and for the reasons given by the Chancellor, mis-user or non-user, cannot be relied on as a substantive and specific ground of a dissolution.

The ground on which I place my opinion, that the corporation is dissolved, is, that they have done, and suffered to be done, acts equivalent to a direct surrender. The Chancellor concedes, and it does not, in my judgment, admit of a doubt, that a corporation may be dissolved by a surrender of all their corporate rights.

In 2 *Kyd on Corp.* 467. the rational and true rule is laid down; he says, " the rule adopted in all the cases which have occurred on this question, seems to have been this, that where the effect of the surrender is to destroy the end for which the corporation, or the corporate capacity was instituted, the corporation, or the corporate capacity is itself destroyed;" and we have the high authority of Lord *Coke* to the same effect. He says, if there be a warden of a chapel, and the chapel and all the possessions be aliened, he ceases to be a corporation, because he cannot be warden of *nothing*; but if the body of a prebend be a manor and no more, and the manor be recovered from the prebendary, by title paramount, yet his corporate capacity remains, because he has *stallum in choro, et vocem in capitulo,* and he is prebendary, although he has no possessions. Thus, according to Lord *Coke*, a recovery by title paramount, would have produced an extinction of the corporation, had it reached all the rights and powers of the corporation, but inasmuch

IN ERROR.
........
ALBANY,
February, 1822.

SLEE
v.
BLOOM.

as there were rights unaffected by the recovery, it did not work a dissolution. Suffering an act to be done which destroys the end and object for which the corporation was instituted, must be regarded as equivalent to the doing an act which produces the very same consequences. A surrender is an act *in pais ;* it can, therefore, be no objection, in this case, that the acts which have dissolved the corporation are acts *in pais.*

This bill was not filed until the 24th of *April,* 1819. In *February,* 1818, all the estate, real and personal, of the corporation, was sold under an execution; and, as has already been stated, the corporation has totally ceased from acting since *December,* 1817. The bill charges, substantially, that the corporation is dissolved; and not one of the respondents asserts, that it does exist, or that there is the remotest idea of resuscitating it. Here is, then, a corporation possessed of nothing, abandoning the end and object of their institution, without pretending that they ever hope or expect to resume their functions; and, it may be added, all the corporators either admit the dissolution of the corporation, (I speak of those who have suffered the bill to be taken *pro confesso,*) or deny, that they are corporators. Thus, presenting the phenomenon of a corporation without corporators, a nominal, inert body, pretending to have life and existence. Such an anomaly cannot be recognized. The argument is, that being incorporated for twenty years, there exists a corporate capacity during that period, and that although all the functions of the corporation have ceased, yet they may be resumed. The second section of the act provides, that as soon as the certificate shall be filed, the persons who shall have signed and acknowledged the same, and their successors, shall, for the term of twenty years next after, be a body politic and corporate, in fact, and in name, &c. The legislature never meant, nor does the act authorize the conclusion, that the corporation should remain and continue during all that period, *nolens volens.* It was implied, that during that time they should do nothing to forfeit their rights, nor surrender them back, or do any act tantamount thereto. The act prolongs the corporation for twenty years, subject to all the

incidents attending corporations; and I have endeavoured to show, that one of the incidents is an extinction of the corporation, if it does what is equivalent to a surrender. I doubt, extremely, whether the capacity to resume the functions of the corporation does, in fact, exist, but it is not necessary to decide that point. I consider it merely as a matter of speculation, thrown out, without any practical reference to the cause, as a stumbling block to the attainment of justice between the parties. For all the substantial purposes of justice, and in effect, the corporation is dissolved. In the case of the *King* v. *Pasmore*, (3 *Term Rep.* 244.) Justice *Ashhurst* says, as to the contrariety of opinions in the books on this subject, I shall not attempt to reconcile them, but we ought to lean to that side which is supported by reason. Possibly, the seeming contrariety may have been, in some degree, occasioned by the equivocal use of the term ' dissolved;' as far as concerns the power of the crown to grant a new charter, I think the corporation was dissolved. As to some particular purposes which do not relate to the powers of government, but to personal privileges which are annexed to the persons of the remaining individuals, such as rights of common, &c. it may be said not to be dissolved, at least till the crown interposes." Justice *Grose*, in the same case, said, " now, in point of good sense, when the purposes for which a corporation was created can no longer be answered, there is no reason why it should not be considered to be so far dissolved, as that the crown may raise there a new corporation," &c.

The doctrine urged by the respondents' counsel is, that this corporation must endure for twenty years, unless it is judicially declared to be dissolved, for mis-user or non-user; and we perceive, by some of the cases cited by the *Chancellor*, that even where there had been an omission to elect burgesses, for 22 years, doubts were entertained whether there had been such a non-user as vacated the charter. It is observable, that the appellant has no control over the process or remedy to dissolve this corporation for non-user. The People of the state, through their law officer, can only institute such proceedings. Then, as regards the appellant, if we are to consider this corporation in existence, he must

patiently await the lapse of twenty years, before he can have any remedy. I say, in the words of Lord *Mansfield*, (3 *Burr. Rep.* 870.) " without an express authority, so strong as not to be gotten over, we ought not to determine a case so much against reason."

In point of good sense, this corporation was dissolved, within the meaning and intent of the act, as regards creditors, when it ceased to *own* any property, real or personal, and when it ceased, for such a space of time, from doing any one act manifesting an intention to resume their corporate functions. The end, being, and design of the corporation, were completely determined ; and if even it had the capacity to re-organize and re-invigorate itself, the case has happened, when, as relates to its creditors, it is dissolved.

If I am right, thus far, then, by the 7th section of the statute, the persons composing the company, at the time of its dissolution, are individually responsible, to the extent of their respective shares, for the debts then due, and owing, by the company.

With respect to the period of the dissolution, it appears to me, that we may safely say, it happened on the 1st of *February*, 1818, when all the property of the company was sold; for, since that time, no corporate act has been done.

The next question is, how far the resolution of the 3d of *November*, 1817, discharged those of the respondents who have complied with its terms, from any further liability to the appellant? That resolution gives the stockholders the privilege of forfeiting their stock, by paying 30 per cent. with costs, on or before the 1st of *December* following. It appears, in the body of the resolution, that the appellant protested against it, as it would not pay the debts of the factory. The evidence places it beyond all doubt, that the debt due to the appellant, who is the only creditor of the company, will be partially paid only, if that resolution has the effect intended by it. A large balance will be irrecoverably lost.

Now, could the trustees pass a by-law, having the effect to deprive a creditor of the company of his only means of satisfaction, by a resort to the stockholders rateably, until his debt was paid? I answer, without hesitation, that such

IN ERROR.
........
ALBANY,
February, 1822.

SLEE
v.
BLOOM.

IN ERROR.
⁘⁘⁘⁘⁘
ALBANY,
February, 1822.
⁓⁓⁓⁓
SLEE
v.
BLOOM.

a by-law, or resolution, is utterly inoperative. It is an attempt to get rid of a responsibility which the law, and common justice, imposed on them; the trustees who assented to this resolution must have known, at the time, from the report of their committees, and the state of their affairs, that 30 per cent. was inadequate to pay the appellant. The trustees had antecedently made calls to the amount of 50 per cent.; and, on the 18th of *August*, 1817, the appellant had assented to a resolution, that on payment of all the arrears of calls, (which, in fact, then amounted to 50 per cent.) with costs, the prosecutions should cease, and no proceeding should be had against any subscriber, other than by way of forfeiture. These calls had been made expressly to satisfy the appellant's debt; and on the 3d of *November*, we find the same trustees, who were themselves interested in the question, discharging the stockholders, on payment of 30 per cent., conscious, at the time, that the appellant must go unpaid for ever.

I do not stop to inquire by what means this resolution was obtained: I pronounce it to be against the fundamental principles of law and equity, legally fraudulent, and, therefore, void and inoperative.

It is argued, that the appellant never gave public notice of his dissent to the resolution; that the 30 per cent. had been paid by several of the respondents, on the faith of the resolution, which was published in the papers; and that the silence of the appellant ought to preclude him from now objecting to the resolution.

There are several answers to this objection. I agree with the appellant's counsel, that those who paid, ought to have ascertained the fact, that the appellant assented to a measure which was to deprive him of a great part of his debt; but how are those respondents prejudiced by the act of paying the 30 per cent.? For if they are not injured in their rights by the payment, they cannot object to the want of notice. Do they mean to say, they would not have paid, had they known that the appellant objected to the resolution? Then they would have been responsible as stockholders under the provisions of the act. The payment goes to diminish the amount which they then would have

been compelled to pay. So that the payment does not in the least prejudice them. Whether there was notice or no notice, therefore, their situations are not altered. But as to the fact of notice, the appellant's dissent was embodied in the resolution, and none of the respondents could have been ignorant of it, if they saw the resolution. All the stockholders lived in and near *Poughkeepsie ;* many of them had personal interviews with the trustees, and it is inconceivable that they should have been ignorant of so important a fact. Again; the trustees were the agents of the stockholders, and it is a fixed principle, that notice to an agent is notice to the principal.

The next point is, whether the appellant has ratified the resolution of the 3d of *November,* 1817, by his acceptance of money from the treasurer of the company, received under that resolution, or rather by his being present at the meeting of the trustees on the 1st of *December* 1817, when it was resolved, that the attorney of the company should apply the funds he had in hand, to the credit of the note given by *Bloom* and others to the *Manhattan Bank,* in consequence of their endorsing the appellant's note for 10,000 dollars. It has been said, that this resolution was passed on the day the moneys were payable under the resolution of the 3d of *November ;* and that it was passed with a view to these very funds ; the appellant being present, and concurring in the resolution, and observing that payment on that note was as good to him as payment by the members on their stock. This has been pronounced a strong ratification of the resolution ; and that as the appellant availed himself of the fruits of it, he could not, in good faith, now object, not having dissented from the application of the money. It has been, also, said, that he should have made his dissent as public as the resolution, and have abstained from particular and pointed participation in its results. His concurrence in a resolution of the 26th of *December,* 1817, directing suits to be brought against such persons as had not complied with the resolution of the 3d of *November,* has, also, been considered a conclusive ratification of that resolution.

It is with the utmost deference to the learned Chancel-

IN ERROR.
········
ALBANY,
February, 1822.
SLEE
v.
BLOOM.

IN ERROR.
...:...

ALBANY,
February, 1822.

SLEE
v.
BLOOM.

lor, that I dissent from this reasoning.   The appellant had, in vain, protested against the resolution of the 3d of *November*.   It would have been a work of supererogation to have repeated his protest, and dissent to resolutions growing out of, and bottomed on that resolution.   Besides, he was not dealing with the stockholders, and his not dissenting from the subsequent resolutions could have no effect upon their conduct.   Silence, unless when a person is bound to speak, and when silence would mislead, can never have the effect attributed to the appellant's conduct.   It would, in my judgment, be carrying the principle of ratification to its utmost limits, to say, that the appellant, after his vehement and solemn protest to the original resolution, ceased his opposition when he saw the trustees following up that resolution.   I cannot consider the appellant's negative conduct on the occasions referred to, as a ratification of the unjust resolution of the 3d of *November*.

The next point is as to the effect of the resolution of the 18th of *August*, 1817, as to those who complied with its terms, and as to such of the stockholders who did not comply with them.   First, as to those who did comply with its terms, the appellant being present, and consenting to that resolution, I concur in opinion with the Chancellor, that he was bound.   It was in the nature of a contract, and is free from any objection of compromitting the rights of third persons and creditors.   Two of the respondents only have paid the 50 per cent., namely, *Martin Hoffman* and *James Reynolds*.   Hoffman paid the 50 per cent. on the 17th of *January*, 1818, and *James Reynolds* paid the 50 per cent. on the 15th of *January*, 1818.   There had been the lapse of some time between the payments and the passing of the resolution; but the payments were made before the sale of the factory on execution, and the resolution had not been rescinded, nor had these respondents been forewarned not to make the payments.   Under these circumstances, I incline to the opinion, that *Martin Hoffman* and *James Reynolds* cannot be considered any further responsible.   But I do not think the other respondents can take any benefit under that resolution.   They have never complied with it; the appellant's assent was undoubtedly given, with the view of immediately

IN ERROR.
.........
ALBANY,
February, 1822.

SLEE
v.
BLOOM.

realizing the amount which a compliance with that resolution would have produced. To say that he is now bound by an offer, made under a different state of things, after a total wreck of all the property of the company, in which the appellant was so largely interested, would be unreasonable and inequitable. The offer was made, and the respondents, except *Hoffman* and *Reynolds*, refused to comply with it. How, then, can the respondents, after such a lapse of time, claim the benefit of this offer, as a contract, when they rejected the offer? The appellant might have very good reasons for making a large sacrifice upon the debt due him. He was willing to do so, upon prompt payment of the 50 per cent. No Court has a right to say to him, that he shall adhere to his proposition, which was rejected by the respondents. There would be no reciprocity in this, and I am entirely satisfied, that we cannot, and ought not, to consider it as an existing contract.

It has been urged, that the appellant was guilty of fraudulent representations, as to the value of the property he sold, and the profitable nature of the business he was carrying on, so that the respondents ought not, in equity, to be bound by their subscriptions. The charge is so destitute of foundation, that it does not deserve a serious refutation. The facts show, that there was much examination and deliberation, on the part of the company, before the purchase was concluded; and although subsequent events proved, that the appellant miscalculated as to profits, this was to be attributed to a change in political events, and not to any fraudulent design to deceive or misrepresent.

It is, also, contended, that such of the respondents as subscribed to the stock of the company, under a promise by the appellant that he would take it off their hands, must be considered, at their election, as holding the same as trustees for him, and are, therefore, not bound to make contribution.

It cannot be doubted, that if any of the respondents have become subscribers in behalf of the appellant, and have merely lent their names to accommodate him, without intending to have any interest in the concern, that they ought not to be holden to contribution. On the other hand, if

IN ERROR.
········
ALBANY,
February, 1822.

SLEE
v.
BLOOM.

any of them have subscribed, under a general assurance from the appellant, that he would take the stock off their hands, if they should require it, and they have gone on acting as stockholders, until the affairs of the company have become bad, and then require a fulfilment of the assurance, they can have no right, either in law or in equity, to an exoneration from contribution.

It will be, at once, seen, that there would be no mutuality or reciprocity in such a bargain. If the concern was profitable, then they would hold on upon their shares; if unprofitable, or disastrous, then they would throw the loss upon the appellant. They would thus make him run the risk of all the losses, whilst they took the chance of all the profits. There is one decisive test. Those of the stockholders who paid the calls out of their own pockets, are entirely precluded from setting up any such promise or assurance; and with regard to them, we must say, that they are concluded. They have evinced, by their acts, that they hold the stock in their own rights, and not as trustees for the appellant. As to them, we are bound to consider the appellant's assurances as merely denoting his confidence in the success of the institution. These observations apply to *George Bloom, Albert Cocks, Derick B. Stockholm, Leonard Davis, John Nelson, Abiel G. Thompson, Elizabeth Tappen, Daniel Hoffman,* and *Benjamin H. Conklin,* and to such of the respondents as have suffered the bill to be taken *pro confesso,* and also to *Peter Ackerman* and *Catharine R. Livingston,* who have entered into a stipulation that these cases shall abide the decision with respect to others, in the same condition as themselves.

Having already expressed an opinion, that *Martin Hoffman* and *James Reynolds* are exonerated, in consequence of their compliance with the resolution of the 18th of *August,* 1817, the particular cases of *John E. Pells,* and *Daniel Coolidge,* require to be considered.

*Pells* was not an original subscriber. He purchased ten shares of *Joseph H. Cunningham.* These shares, at the time of the purchase, had been paid up in full. He received *scrip* for them, with an endorsement by the treasurer that they were paid in full. I can perceive no principle on

IN ERROR.
........
ALBANY.
February, 1822.
SLEE
v.
BLOOM.

which he can be charged. If even there could be any doubt in such a case, with respect to creditors who have no concern in the institution, there can be none in this case, for the appellant has been benefitted by this very payment. *Pells*, is, therefore, entitled to be dismissed from the cause.

With respect to *Daniel Coolidge*, he asserts, and proves, that he subscribed for twenty shares, under an assurance from the appellant, that he should be at liberty to pay for his stock, or not, as he chose, and that the appellant would at any time take it back, if he should not be desirous of keeping it. *Coolidge* admits, that he paid five dollars on each share, under the call of the 7th of *March*, 1815, and it appears, that he was appointed, and acted, as secretary of the company. On the 1st of *December*, 1817, he made a formal tender of his scrip to the appellant.

I can see no difference between this case and those of the respondents who went on paying other calls, and who availed themselves of the resolution of the 3d of *November*. The payment by *Coolidge*, out of his own funds, of the call of the 7th of *March*, 1815, his acting as one of the company, and his retaining his stock until the affairs of the company were desperate, manifest a willingness to be a stockholder, if the undertaking turned out prosperously, but, if otherwise, not.

It has been asserted, that *Crosby* and *Cocks* are creditors of the appellant, and have a set-off against him, and that these demands ought to be deducted from the amount which they may be required to pay in this case. It seems to me equitable, that such deductions should be made, if their respective demands are susceptible of adjustment before a master; for although the respondents are jointly sued, they are individually, and not jointly, liable to the appellant.

The respondents' counsel has strenuously insisted, that the only responsibility assumed by the subscription, was a right, at the election of the subscribers, to forfeit their shares, with all previous payments made thereon; and this opinion is founded on the decision in this Court, in the case of *Jenkins* v. *The Union Turnpike Company*, (1 *Caines' Cas. in Error*, 86.) In a suit by the *Dutchess Cotton Manufactory*

IN ERROR.
........
ALBANY,
February, 1822.

SLEE
v.
BLOOM.

v. *Davis*, (14 *Johns. Rep.* 244.) which was an action on the subscription paper in this case, the Supreme Court had occasion to review all the cases ; and that Court entertained no doubt of the liability of the stockholders, in an action brought to enforce the calls. I need not now attempt to support the correctness of that decision, because, if the corporation is dissolved, and if the resolution of the 3d of *November* is void, the respondents were stockholders when the corporation became dissolved, and then the statute expressly renders them liable to creditors, to the amount of their stock.

· If, however, the corporation was not dissolved, I have no doubt, that upon the principles of the case of *Dr. Salmon* v. *The Hamborough Company*, (1 *Cases in Ch.* 204., and in 1 *Kyd on Corp.* 273.) the appellant would be entitled to a decree in his favour. I forbear going into that case, for I do not feel that it is necessary. The Court intimated, on the argument, that we should not sustain the question on this appeal, what was the amount due to the appellant from the company, as the Chancellor had not considered that point.

· The result of my opinion is, that the decree complained of be reversed ; that the cause be remitted to the Court of Chancery, with directions, to enter a decree, declaring all the respondents, except *Martin Hoffman, James Reynolds,* and *John E. Pells,* liable, individually, to the extent of their respective shares of stock in the said company, and no further, to pay the appellant's debt ; but that the payments made by the respondents on their stock, shall be deemed so far to have diminished their liability ; and, as respects *Martin Hoffman, James Reynolds,* and *John E. Pells,* that the bill be dismissed, and that they be paid their costs incurred in the Court below.

YATES, J. and VAN NESS, J. concurred.

PLATT, J. being related to one of the parties, declined giving any opinion.

Woodworth, J. not having heard the argument, gave no opinion.

IN ERROR.
........
ALBANY,
February, 1822.

SLEE
v.
BLOOM.

The rest of the Court (Austin, Senator, dissenting) concurring in the opinion of the Chief Justice, it was, thereupon, ORDERED, ADJUDGED, and DECREED, that the decretal order of the Court of Chancery be reversed, and that the cause be remitted to the Court of Chancery, and that that Court enter a decree against all of the above-named respondents, excepting *Martin Hoffman, James Reynolds*, and *John E. Pells.* That the said respondents respectively pay to the appellant, towards the discharge of his debt against *The Dutchess Cotton Manufactory*, the amount of their respective shares of stock of 100 dollars, on each share, or so much thereof as may be necessary to pay the appellant's debt, when ascertained, to wit, *George Bloom* thirty shares; *Cyrenus Crosby*, fifty shares; *Robert Forrest*, ten shares; *Peter Ackerman*, ten shares; *Albert Cocks*, ten shares; *Nathan Myers* and *Nathaniel Ferris*, twenty shares; *Daniel Coolidge*, twenty shares; *Derick B. Stockholm*, ten shares; *Leonard Davis*, thirty shares; *John Nelson*, ten shares; *George Booth*, thirty shares; *Samuel S. Howard*, five shares; *Abiel G. Thompson* twenty shares; *Daniel Hoffman*, ten shares; *Benjamin H. Conklin*, thirteen shares; *Elizabeth Tappen*, ten shares; *Catharine R. Livingston*, ten shares; and *Jeremiah Wintringham*, ten shares; and that they jointly pay to the appellant his costs in the Court of Chancery; but from the amount of the said several sums to be paid by the respondents aforesaid, there is to be deducted such amount as appears by the pleadings and proofs, to have been paid by them respectively, upon their respective shares of stock in the said company ; and if it shall appear, that the said *Cyrenus Crosby*, and *Albert Cocks*, or either of them, are creditors of the appellant, as they have asserted, and have demands which ought in justice to be set-off towards the demands of the appellant against them respectively, and which are susceptible of adjustment before a Master, such set-off is to be made in their favour : and it is further ORDERED, ADJUDGED and DECREED, that the appellant's bill be dismissed as to *Martin Hoffman, James Rey-*

IN ERROR.

ALBANY,
February, 1822.

*nolds,* and *John E. Pells*, and that he pay to them their costs in the Court below; and that the several parts of this decree be enforced, according to the practice of the Court of Chancery."