## SUPREME COURT.

GORHAM D. ABBOT agt. THE AMERICAN HARD RUBBER COMPANY, WILLIAM JUDSON, and eight others.

A *sale* and *transfer* by the *directors of a corporation*, of the entire property of the corporation (except its real estate,) and which transfers to the purchasers the whole business of the corporation, is *void* as against *any of the stockholders* of the corporation *not consenting* to such sale.

The principle that a *majority* must govern and control, (in the absence of any special provisions in the charter,) applies to corporations, and the minority are bound by the acts of the majority when those acts are within and according to the charter, and not *inconsistent with the object and purpose with which it was organized*.

Purchasers on such a sale cannot be considered as *bona fide* purchasers for value without notice, where they pay no money, but give their promissory notes, and where it must be assumed from the facts that they knew the purpose and object for which the corporation was organised, and the only business which it had prosecuted ; and they must also be presumed to know the law.

*New York Special Term, October*, 1860.

Motion for injunction and receiver.

It appears that a corporation was heretofore organized, known as the Beacon Dam company, in which the plaintiff became a stockholder, and the name of which was subsequently changed to the American Hard Rubber Company. The plaintiff, besides transferring to the first mentioned company, certain rights which he possessed, of applying vulcanised India rubber to educational apparatus; contributed a large amount of funds required by the company in the establishment and erection of its buildings, and in the purchase of machinery and tools, &c. Some time after the change of the name of the company as above mentioned; the directors under a resolution passed, (as they claimed,) by a majority of the stockholders, sold all its property, (except its real estate,) to Poppenheusen and Konig, two of the defendants, herein; the sale being opposed by the plaintiff, and effected against his consent. The allegations of fraud, set up in the complaint, were denied in the answer.

E. W. Stoughton and D. E. Wheeler, *for plaintiff*.
S. A. Foot and W. A. Curtis, *for defendants*.

Sutherland, J. I think the sale and transfer by the four directors—Judson, Ropes, Norton and Henry B. Goodyear—to Poppenheusen, Konig and Funke, of the entire property of the company, except its real estate, with its machinery and fixtures, was void as to the plaintiff and such other stockholders as did not consent to or authorize the sale.

I do not think that it appears that a majority of the stockholders did in fact authorize the sale; but had the sale been authorized by a majority of the stockholders, or by stockholders representing a majority of the stock, I think it would have been void as to the plaintiff and other stockholders not consenting to or authorizing it.

In looking at this question as to the power and authority

of the directors to make the sale and transfer, with or without the authority of a majority of the stockholders, so as to be valid to bind the stockholders who did not consent, in this case and as between these parties, the company should be considered as chartered and organized for the sole purpose and object of manufacturing goods or articles of India rubber, or of its patented compounds under the Goodyear patents.

The corporation, as originally organized in May, 1852, with a capital of $25,000, composed of 1,000 shares of $25 each, was called the Beacon Dam company, and would appear to have been organized for the object and purpose of building and maintaining a water-power, on the Naugatuck river, in Connecticut, and for carrying on a manufacturing business generally. The name was subsequently changed to " American Hard Rubber Company," and in January, 1853, the capital stock was increased from 1,000 shares of $25 each, to 4,000 shares of $25 each, the plaintiff subscribing for and taking the 3,000 additional shares, retaining 1,000 of them and distributing the other 2,000 among different parties.

The increase of capital took place solely with reference to the business of manufacturing India rubber goods, under the Goodyear's patents; and all the stockholders agreed from that time to enter upon and prosecute exclusively the business of manufacturing articles of the patented compounds of India rubber; and from that time until the sale, by the directors, to Poppenheusen, Konig and Funke, in February, 1860, the manufacture and sale of such articles would appear to have been the only business of the company.

I think, therefore, that, as between these parties and for the purpose of this decision, I must consider the sole and only object and purpose for which the company was organized, the business which it carried on, and which the directors who made the sale were elected to direct and manage,

to have been the manufacturing and selling of goods or articles of India rubber, or of one or more of its compounds, under the Goodyear's patents.

That being so, I think the sale in question was void as to the plaintiff and other stockholders not consenting, because its effect was, and must necessarily have been, to discontinue *all* business of the corporation; in effect to dissolve it; and I must presume on the conceded facts of this case, that the parties to the sale knew or anticipated that such would be the effect and consequences of the sale.

The directors sell in one lump, not only all the stock of the corporation, manufactured and unmanufactured, but all rights of the corporation under the patents to manufacture any more, and all its property of every description, except the water-power and real estate, with its machinery and fixtures in Connecticut, which they at the same time lease to Poppenheusen and Konig for one year; thus, by this sale, discontinuing or destroying all business of the corporation for a term, at least; and by the sale of the patent rights, or of the corporation's right to manufacture under the patent right, forever putting it out of its power, without re-purchasing the right to do so, to further prosecute the only object and purpose and business for which it had been organized, and which it had prosecuted; and thus leaving the corporation a mere skeleton, with a name, and perhaps a legal technical existence by the statute book; but without real life, or business, or usefulness.

I do not think the directors, even with the consent of a majority of the stockholders, had a right, as against stockholders not consenting, thus in effect to discontinue its existence, and defeat the object of its organization.

I must assume that these directors were chosen to manage the business of the corporation, not to destroy and end it.

If the corporation was insolvent, it is presumed the laws of Connecticut had provided a mode of having it dis-

solved; if it had good cause to surrender up its franchises to the goverment, it is presumed the laws of the same state had also provided for that. But I cannot presume that the directors, or a majority of the stockholders of the corporation, by any law of Connecticut, or otherwise, had a right thus, by voluntary sale, to discontinue its existence, and in effect surrender its franchises, without consulting the government or its creditors, and without the consent of a minority of its stockholders.

To hold that the directors could thus discontinue, wind up and defeat the purpose, object and business, for which the corporation was organized, even with the consent of a majority of the stockholders, so as to bind the minority not consenting, would in effect be depriving the minority, and every one of the minority, of their property without their consent.

No doubt that the principle, that a majority must govern or control (in the absence of any special provision in the charter or constitutional articles,) applies to corporations, and that the minority are bound by the acts of the majority, when those acts are within and according to the charter or constitutional articles of the corporation, and *not inconsistent with the object and purpose with which it was organized.* Such acts a stockholder consents to, by becoming a member of a corporation, because he is presumed to know the law, and the rights of the majority by the law. But this democratic or representative principle does not apply to an act or acts of the majority, inconsistent with the continued existence of the corporation and the very object and purpose for which it was organized; nor does a stockholder consent to such acts by becoming a member, because the law does not justify them; and he cannot be presumed to have anticipated or thought that such acts would ever be perpetrated or attempted by the majority.

I cite the following authorities as supporting or illustrating the principle on which I hold the sale in question, void

for want of authority, as to the plaintiff and other stock-holders not consenting, assuming it to have been made by a majority of the stockholders. (*Livingston* agt. *Lynch*, 4 *John. Chan.*, 573; *Conro* agt. *Port Henry Iron Co.*, 12 *Barb.*, 62, 63; *Ward* agt. *The Sea Ins. Co.*, 7 *Paige*, 294; *Hartford and N. H. R. R. Co.* agt. *Croswell*, 5 *Hill*, 384; *In the matter of Niagara Ins. Co.*, 1 *Paige*, 257; *Slee* agt. *Bloom*, 19 *John.*, 456; *Rollins* agt. *Clay*, 33 *Maine*, 132; *Smith* agt. *Smith*, 3 *Des.* (*S. C.*) *Chan. R.* 557; *Kean* agt. *Johnson*, 1 *Stock.*, 401; *New Orleans, Jackson and G. R. R. Co.* agt. *Harris*, 27 *Miss.*, 517; *Hare* agt. *Society Attorneys*, 1 *Collyer*, 370; *Bagshaw* agt. *Easton Co. R. R. Co.*, 7 *Hare Chan.*, 114; *Bank of Com.* agt. *Bank of Brest, Harrington Chan.*, (*Mich.*) 106, 10, 11; *Town* agt. *Bank of River Raisin*, 2 *Doug.*,(*Mich.*) 536; *Ang. and Ames on Corp.* §§ 499, 500, 390, *et seq.*)

The sale and transfer in question was not and did not purport to be a sale of the property of the corporation for the benefit of its creditors. If the property was sold for its full value, the creditors would have a right to complain, for it was not a sale for money, but for promissory notes, payable at a future day; and although the notes may be good, and the makers abundantly responsible, yet the corporation, or its directors, had no right to compel the creditors to wait until the notes were paid.

In passing the resolution, the resolution relied upon by the defendants as an authority by a majority of the stock-holders to make the sale and transfer, it would appear that a majority of the shares voted on, were voted on by proxy. I must presume, in the absence of anything to show the contrary, that these proxies were ordinary proxies, given with reference to the transactions of the ordinary and legitimate business of the corporation, and that they did not and could not authorize votes for so extraordinary a sale and transfer as the one in question. Hence the resolution cannot be said to have been in fact passed by a majority of

the stockholders, and its passage can hardly be claimed as an authority by the majority.

A similar remark may be made as to the Connecticut, statutes referred to by the counsel for the defendants, authorizing a majority of the stockholders to transact business; and not less than three directors to manage the affairs and business of corporations;—these statutes must be presumed to have been intended to apply to the ordinary and legitimate business of corporations, and not to so extraordinary a proceeding as the sale and transfer in question.

The purchasers 'cannot be considered as *bona fide* purchasers for value without notice, for they did not give money or value, but their notes or promises to pay, and I must assume from the conceded facts of this case that they knew the purpose and object for which this corporation was organized, and the only business which it had prosecuted; and as they must also be presumed to know the law, I must also presume that they knew that the directors, with or without the consent of the stockholders, had no right or authority to make the sale and transfer in question to them.

It is not necessary to pass upon the other two grounds upon which the counsel for the plaintiff insist that the sale was void; to wit, fraud in fact, and as being in contravention of the equity principle or rule that a trustee cannot directly or indirectly become the purchaser of the trust property for his own benefit; for if the sale in question was void as to the plaintiff and other stockholders not consenting, on the ground that it was made without their consent or authority, the other two grounds, however well taken, could not make a void thing void.

The sale being void, as to the plaintiff and other stockholders not consenting, it follows, I think, that the temporary injunction should be continued, and that a receiver is necessary to preserve the property of the corporation within the jurisdiction of this court, for its creditors and stockholders, until the final decree in this action, or in the action

in the circuit court of the United States, in aid of which it would appear that this action was brought, or until its dissolution may be decreed by the courts of Connecticut.

I shall accordingly continue the injunction, and make a reference to Hon. William Mitchell to appoint a suitable and proper person as receiver, with the usual powers, and take and approve of the necessary and usual security, for the faithful performance of his trust.