## Case No. 7,017.

### In re INDEPENDENT INS. CO.

[Holmes, 103; [1] 6 N. B. R. 260; 1 Ins. Law J. 735.]

Circuit Court, D. Massachusetts. Feb. 1872.[2]

---

[1] [Reported by Robert D. Benedict. Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

[1] [Reported by Jabez S. Holmes, Esq., and here reprinted by permission.]
[2] [Affirming Case No. 7,018.]

Chester I. Reed and J. R. Bullard, for petitioners.

Charles R. Train, J. O. Teele, and H. W. Paine, for creditors.

SHEPLEY, Circuit Judge. The constitution of the United States confers upon congress the power to establish uniform laws on the subject of bankruptcies throu~hout the United States. Unquestionably, congress is as competent to apply such laws to private corporations created by the states as to natural persons or private corporations created by authority of congress. Sweatt v. Boston, H. & E. R. Co. [Case No. 13,684]. Congress has exercised the power, thus conferred upon it by the constitution, by the enactment of the bankrupt act; and "the provisions of this act apply to moneyed, business, or commercial corporations."

Having thus exercised this power in the enactment of the bankrupt act, and the constitution further providing that the laws of the United States, which shall be made in pursuance of the constitution, shall be the supreme law of the land, the inference is irresistible, that state laws on the subject of bankruptcy and insolvency must yield to the law of congress on the same subject, where the state law applies to the same subject-matter; and where it differs in material respects from the law of congress, it appears clear that the state law is suspended, while the law of congress remains in force. Thornhill v. Bank of Louisiana [Id. 13.992]; Ex parte Eames [Id. 4,237]; Sturges v. Crowningshield, 4 Wheat. [17 U. S.] 122, 196; Ogden v. Saunders, 12 Wheat. [25 U. S.] 213; May v. Breed, 7 Cush. 40: Griswold v. Pratt, 9 Metc. [Mass.] 23.

The Independent Insurance Company of Boston is a corporation created by the laws of Massachusetts to transact the "business" of insurance. It is clearly included in the class of "business or commercial corporations" to which the provisions of the bankrupt act apply. After the passage of the bankrupt act, it became insolvent, and committed such acts of bankruptcy as clearly constituted it one of those "corporations whose pecuniary condition brings them within the provisions of the act, entitled to the benefits which the act confers, and subject to all its obligations and requirements." Sweatt v. Boston, H. & E. R. Co. [supra].

After this time, the operation of any state law regulating the assignment and distribution of the property of the insolvent debtor corporation, and affecting the same persons, property, and rights that would be affected by proceedings under the bankrupt act, was suspended. It was not the intention of the framers of the constitution, or of congress, when it enacted the bankrupt act, to have in existence two distinct and diverse systems affecting the same persons, property, and rights, leaving it to the option of the debtor to elect one or the other at his pleasure. In the language of the supreme court of Massachusetts in Griswold v. Pratt, 9 Metc. [Mass.] 23, "When the power is exercised by congress, and a bankrupt law is in force, it does suspend all state insolvent laws applicable to like cases; and this effect follows the enactment of such bankrupt law, and does not require the actual institution of proceedings in bankruptcy to produce such result."

On the ninth day of January, 1872, the firm of Joseph Nickerson & Co. filed their petition for adjudication of bankruptcy against the Independent Insurance Company. The petition sets forth, inter alia, the insolvency of the company, and alleges that the company committed acts of bankruptcy by fraudulent preferences, on the fourteenth day of October, 1871, to Edward Atkinson, and to Henry Atkins & Co., who were creditors of the company, and whose claims had long been overdue when the payment was made. Upon filing proofs sustaining the allegations in the petition, an order was issued by the district court to the insurance company to show cause why the prayer of the petition should not be granted. On the return-day of this order, Chester I. Reed and George Ripley filed a plea to the jurisdiction of the court, setting out that on the ninth day of January, 1872, they were, by a decree of the supreme judicial court of Massachusetts, rendered in a suit instituted on the second day of December, 1871, by the insurance commissioner in behalf of the commonwealth of Massachusetts, against said insurance company, appointed receivers of said company, and had accepted the trust, and duly entered upon the performance of their duties. The plea further avers, that, by the decree aforesaid of the supreme judicial court of the commonwealth of Massachusetts, the Independent Insurance Company, which was a corporation created and existing under and by virtue of a statute of said commonwealth, was dissolved, and an injunction, which had previously issued in said suit against any further prosecution of its business by said insurance company, was made perpetual. The record of the pro-

ceedings in the supreme court, and of the decree, is annexed to the plea, and makes a part thereof. The decree of the district court proceeds as follows: "And it appearing that no denial of bankruptcy was made on the return-day of the order to show cause, and that said corporation, by its answer, admits the acts of bankruptcy alleged against it; and thereupon, and upon consideration of the proofs in said cause, and the arguments of counsel thereon, it was found that the facts set forth in said petition were true; and it was therefore adjudged, that the Independent Insurance Company became bankrupt within the true intent and meaning of the act entitled 'An act to establish a uniform system of bankruptcy throughout the United States,' approved March 2, 1867, before the filing of said petition; and it is therefore declared and adjudged bankrupt accordingly." A warrant in bankruptcy was accordingly issued.

Within the time prescribed by the rules, the receivers filed in this court their petition for a revision and reversal of these orders and decrees of the district court in bankruptcy.

The errors assigned in the petition in the judgments, orders, and decrees of the district court are: First. That, because of the proceedings in the supreme judicial court of Massachusetts, pleaded as aforesaid, and verified by the record aforesaid, and which record was not in any respect controverted, and because of the statutes of said commonwealth in relation to insurance corporations, the said district court had not jurisdiction to make said orders, adjudication, and decrees. Second. Because of said proceeding of said supreme court and said statutes, and upon the pleading and proofs aforesaid, said corporation had no right to appear in said court, except by said Reed and Ripley, the petitioners; and could not by any counsel, against the objection of said Reed and Ripley, appear, or admit the truth of any averment, plea, or allegation, or matter of fact or law. The petition then alleges that the decree of said court, basing its adjudication of bankruptcy wholly upon the admissions of said parties claiming to act as president and attorney of said company, was erroneous; and it avers that the corporation was dissolved on the ninth day of January.

In support of the petition for the exercise of the revisory power of this court, counsel contend that the corporation was the creation of the state, and existed merely at its pleasure; that it was clearly in the power of the state to dissolve it; that this power has been exercised; that the corporation is defunct, and became so before the adjudication in bankruptcy; that consequently the proceedings abated, there being no provision in the bankrupt act to the contrary; that the state law does not continue the corporation in being so as to change this result, and that, if the corporation is still living, it can

only act through receivers; and that therefore the decree of the district court was erroneous.

Unquestionably, under ordinary circumstances, the sovereignty which has called a corporation into being, and which by the terms of the charter or by the provisions of a general law has reserved the right to do so, may amend the charter, or repeal it at will, by its legislature; or, acting through its judicial tribunals, it may declare the charter forfeit, or terminate the existence of the corporation.

Whether, subsequent to the exercise by congress of its constitutional power to establish a uniform system of bankruptcy, it would be within the power of a state, acting either through its legislature or its judicial tribunals, after an act of bankruptcy had been committed by an insolvent corporation, and all state insolvent laws applicable to such cases are suspended, to annul the existence of the bankrupt corporation, so as to prevent the commencement of process, or abate the proceedings after they had been commenced under the act of congress, may well be doubted. If this could be done, the operation of the bankrupt law upon insolvent corporations could be defeated, the whole jurisdiction on bankruptcy foreclosed, the general creditors could only reach the assets within the reach of state process, and all extra-territorial property would be left in the grasp of attaching creditors; and so far as the extra-territorial assets were concerned, payments in full and preferences to favored creditors would be upheld.

It is not necessary to decide this question in this case and at this time. The most cursory examination of the section of the fifty-eighth chapter of the statutes of Massachusetts, under which these proceedings were initiated by the insurance commissioner, will show that it does not contemplate or authorize any such decree as would annul the existence of the corporation. A careful examination of the record will show that no such decree was sought or prayed for in the petition; and the like examination of the decree will as conclusively show that no such decree was made by the court.

Section 6, c. 58, of the General Statutes of Massachusetts provides as follows: "If upon examination the commissioners are of opinion that a company is insolvent, or that its condition is such as to render its further proceedings hazardous to the public or to those holding its policies, they shall apply to a justice of the supreme judicial court to issue an injunction restraining such company, in whole or in part, from further proceeding with its business, until after a full hearing can be had. Such justice shall forthwith issue the injunction, and, after a full hearing of all parties interested, may dissolve or modify the same, or make it perpetual. And he may make such orders and decrees as may be needful to suspend, restrain, or

prohibit the further continuance of the business of the company, and may appoint agents or receivers to take possession of the property and effects of the company, subject to such rules and orders as are from time to time, according to the course of proceedings in equity, prescribed by the court, or a justice thereof in vacation."

It is as clear that this power to suspend, restrain, or prohibit the further continuance of the bankrupt corporation, no more authorized the court in this form of proceeding to annul the being of the corporation, than a similar statute power to suspend, restrain, or prohibit the further continuance of the business of a bankrupt natural person would authorize the court to take his life.

The insurance commissioner, in his petition, represented to the court that the corporation was insolvent, and its condition was such as to render its further proceedings hazardous to the public and to policy-holders. He prayed for a writ of injunction, commanding the corporation, its officers and agents, to refrain from further proceeding with the business of the corporation; for the appointment of receivers, to take possession of the property of the corporation, subject to the order of the court; and for notice to the corporation to show cause why such injunction should not be made perpetual and the receivers appointed as prayed for; and for "such further orders and decrees in the premises as may be needful."

By the final decree of the court, the injunction previously issued in said cause, as prayed for, was made perpetual. Receivers were appointed to take possession of the property and effects of said corporation, and take charge thereof; to collect the debts due the corporation; to pay all debts due from said corporation, if the funds coming to their hands are sufficient therefor, and, if not, to distribute said funds ratably among the creditors of said corporation "who duly prove their claims; and if there is any balance left in their hands after paying the debts as aforesaid. to pay and distribute the same among the persons legally entitled thereto, all under the direction of this court. And to this end the said receivers shall have power to prosecute and defend suits in their own names, and do all other acts which might be done by said corporation if in being, for the purpose of settling any unfinished business thereof."

The decree further commands all persons and corporations holding property or evidences of property of any kind belonging to said insurance company, to deliver the same to the receivers. and commands the receivers forthwith to take possession of the same. Then follows the portion of the decree upon which the argument of counsel is based. It is as follows: "It is further adjudged and decreed. that said corporation be and the same is hereby dissolved."

By virtue of this decree, it is claimed that the corporation ceased to exist, for any purpose, before the adjudication of bankruptcy: that the bankrupt law does not authorize process to issue in bankruptcy against defunct corporations or deceased individuals, or undertake to administer on their estates; that it acts only on the living, and has no dealings with the dead, unless they die after the decree in bankruptcy.

In this view of the case, it becomes important to consider whether this corporation is so far defunct, whether its charter is so annulled, and its franchise to be a corporation is so far taken away by this decree, that it cannot be considered as having any being or existence, for any purpose whatever.

We have already seen that an act annulling the charter and destroying the life of the corporation was not provided for in the section of the statute under which the proceedings were commenced, nor prayed for in the petition upon which the decree was founded.

It is true, nevertheless, that the decree does adjudge the corporation dissolved; but we are satisfied that, by a fair construction of this language, as used in the concluding portion of the decree, it was the intention of the court only so far to dissolve the corporation as, in the language of the statute under which they were acting, might "be needful to suspend, restrain, or prohibit the further continuance of the business of the company;" and that it was not the intention of the court, in the use of this language, to make such a decree, under the sixth section, on the application of the insurance commissioner, as by virtue of the eighth section, and under the other provisions of the General Statutes of the state, they might make in a process of quo warranto instituted by the attorney-general adjudging the charter forfeited and annulled.

In the language of text-writers, of statutes, and not infrequently of judicial decisions, the phrase "dissolving a corporation" is used, sometimes as synonymous with annulling the charter or terminating the existence of the corporation, and sometimes as meaning merely a judicial act which alienates the property and suspends the business of the corporation, without terminating its existence. This is paralysis, not necrosis,— a suspension of corporate action, not a cessation of corporate life. As a solvent liquid, or heat, dissolves a crystal by separating the parts and breaking the continuity of the atoms which compose it, leaving it formless and invisible to the eye. yet with the capacity of being crystallized anew into its pristine form and beauty; "a figure trenched in ice, which with an hour's heat dissolves to water and doth lose its form." and which an hour's cold may restore to its original form and substance [as a meeting. a parliament or assembly, dissolved so as to suspend for a time its unity of action, yet

existing with the capacity for a new aggregation of its original constituent parts],[3]— a corporation may, for certain purposes, be considered as so far dissolved as to be incapable of injury to the public, and yet as retaining all the vitality which may be essential for the protection of the rights of others.

This doctrine has been applied in several cases in the state of New York, in the construction of a statute of that state, concerning manufacturing corporations, which provided, that, for all debts due and owing by the company at the time of its dissolution, the persons composing such company shall be individually responsible, &c. Under this statute, where an insolvent corporation suffered its property to be sacrificed, the annual elections were omitted, and no act was done manifesting an intention to continue the corporate functions, the court, for the sake of the remedy against the individual members and in favor of creditors, presumed a virtual surrender of the corporate rights, and "a dissolution" of the corporation. Yet, in these cases, the courts in New York did not decide that the companies had lost all their rights, or were defunct corporations; but only that, even if they had a right to reorganize themselves, and were so far in being, the case had happened in which they were "dissolved" for the purposes of remedial action by their creditors. Slee v. Bloom, 19 Johns. 456; Penniman v. Briggs, 1 Hopk. Ch. 343, 8 Cow. 387; 2 Kent, Comm. 311, 312.

But in the learned and exhaustive opinion of Judge Gray, in the case of Folger v. Columbian Ins. Co., 99 Mass. 267, is to be found perhaps the most perfect compendium of the law on this subject. In that case, the supreme court of New York had adjudged "that the Columbian Insurance Company be and it hereby is dissolved." But the supreme court of Massachusetts did not hesitate to inquire whether the judgment thus obtained in New York, and relied on in Massachusetts, was rendered by a court having jurisdiction of the cause and of the parties, and to decide that to decree an absolute and final dissolution of a corporation at the suit of an individual was no part of the general jurisdiction of a court of law or chancery, and can only be justified by express statute; and then, after examining the express provisions of the statutes of New York, upon which the proceedings were based, to decide that, notwithstanding the supreme court of New York had adjudged the corporation "dissolved," and Chancellor Walworth had decided that such proceedings had effected "a virtual dissolution of the corporation," yet the supreme court of Massachusetts say, "It does not extinguish its franchise, terminate its legal existence, or render it incapable of being sued at law or

in equity." In the light of this opinion, it is not difficult to see the proper construction to be given to the words of the decree of the supreme court of Massachusetts "dissolving" this corporation, as a dissolution adjudged by a court which had decided that such "a dissolution of a corporation cannot deprive its creditors or stockholders of their rights in its property," "does not extinguish its franchise, terminate its legal existence, or render it incapable of being sued at law or in equity." See, also, Coburn v. Boston Papier-Mâché Manuf'g Co., 10 Gray, 243; Taylor v. Columbian Ins. Co., 14 Allen, 353; Bacon v. Robertson, 18 How. [59 U. S.] 485, 487; Lum v. Robertson, 6 Wall. [73 U. S.] 277; Hunt v. Columbian Ins. Co., 55 Me. 291.

This doctrine in relation to the extinction of a corporation is not a novel one; for in 1628 it was adjudged, upon the authority of earlier cases, in the case of Hayward v. Fulcher, W. Jones, 166, that a dean and chapter were not dissolved by a surrender to the king "of all their possessions, rights, liberties, privileges, and hereditaments, which they had in right of their corporation." See, also, the Case of the Dean & Chapter of Norwich, 3 Coke, 75a.

The court, therefore, entertains no doubt that this corporation still exists, for the purpose of being proceeded against in bankruptcy.

The petition also assigns as error in the decree of the district court, that the corporation had no right to appear in said court except by the receivers, and could not by counsel, against the objection of the receivers, appear, or admit by plea or otherwise any matter of law or fact; and that the decree of the district court, basing its adjudication in bankruptcy wholly upon the admission of Sanford as counsel for the company, was erroneous. An examination of the record fails to convince the court that this assignment of error is sustained by the facts in the record, even if it were tenable in law.

Granting, for the purpose of determining this question, which the court is not now called upon to decide, that the receivers were the sole and only proper persons to represent the corporation, yet the only plea or answer made by them was a denial of the jurisdiction of the court in bankruptcy. This plea was heard, considered, and, as we have seen, properly overruled. No answer was put in by them, or any person, denying the acts of bankruptcy; and, after the plea to the jurisdiction was overruled, no cause was shown by them, or by any one, why a warrant in bankruptcy should not issue.

If the president and attorney of the corporation, or those claiming to act as such, had no right to represent the corporation, then there was no denial of the allegations in the petition, and no cause shown why the warrant should not issue upon the applica-

[3] [From 6 N. B. R. 260.]

tion of the petitioners in bankruptcy, and the accompanying proofs. The decree of the court was well founded upon the fact recited in the decree itself; "it appearing that no denial of bankruptcy was made on the return-day of the order to show cause," without taking into consideration the other fact recited in the decree, that the corporation had by its answer admitted the acts of bankruptcy alleged against it.

It is not necessary to determine to what extent the receivers have the authority to represent the corporation itself. But it is clear, that, occupying the position they do,—not as receivers under a mortgage or other lien or incumbrance on the property of the corporation which might take the property out of the operation of the bankrupt law, but as receivers appointed under a state law applicable to insolvent corporations, and to the distribution among the creditors of the assets of an insolvent corporation,—they have no power to withhold the assets of the company, and to liquidate its liabilities and affairs according to the mode provided by state laws for the liquidation of insolvent corporations. As well stated in Thornhill v. Bank of Louisiana [Case No. 13,992], "this cannot be allowed. No mode of proceeding authorized by a state law can be permitted to have this effect. If the forfeiture, under the state law, of the charter of the bank raises an obstacle to the jurisdiction of the federal courts, then the claim authorizing the forfeiture of the charter is suspended by the federal law. To hold otherwise is to allow the states, by a particular form of liquidation, to override a law of congress, on a subject on which congress, by the constitution, has supreme power." In Cushing v. Arnold, 9 Metc. [Mass.] 23, Dewey, J., says: "When the power is exercised by congress, and a bankrupt law is in force, it does suspend all state insolvent laws applicable to like cases; and this effect follows the enactment of the bankrupt law, and does not require the actual institution of proceedings in bankruptcy to produce such result."

The sooner it is understood, that now, when a uniform law of bankruptcy is in operation under the authority conferred upon congress by the constitution of the United States, no power exists to wrest from the jurisdiction of the courts in bankruptcy the assets of such bankrupt individuals and corporations as are within the scope of the provisions of the bankrupt act, the more will the beneficent provisions of that act be felt and appreciated by the mercantile community. Nowhere is this doctrine in relation to the effect of a bankrupt law upon the operation of the insolvent laws of the states more clearly and ably enunciated than in the learned opinions upon this subject to be found in the reported decisions of the supreme judicial court of the commonwealth of Massachusetts.

Petition dismissed.