Opinion of the court, by
Judge Wright:
Two questions are presented for the consideration of the court:
1. Whether the bill, in any aspect, presents a case proper for the interference of a court of chancery ?
2. Whether any of the defendants have been improperly made defendants ?
> As to thfe first question, it is not my purpose to go into a detailed examination of the numerous authorities cited at this time-. If the case made in the bill is one- under which facts might be proven, entitling the complainant to any relief, the demurrers can *149 not be sustained. The bill is not artificially or precisely drawn; and the case is one of some doubt and difficulty. It claims, among other things, to be relieved against the fraudulent acts of the directors and several of the stockholders of the bank, and for an account. ^Matters of' trust and account are within the undisputed jurisdiction of a court of equity.
Judge Story, in the case of Wood et al. v. Deeman et al., 3 Mason, 310, in discussing this subject, says, “ It appears to me very clear, upon general principles, as well as the legislative intention, that the capital stock of banks is to be deemed a pledge or trust fund for the payment of the debts contracted by the bank. The public, as well as the legislature, have always supposed this to be a fund appropriated for such purpose. The individual stockholders are not liable for the debts of the bank in their private capacities. The charter relieves them from personal responsibilities and substitutes the capital stock in its stead. Credit is universally given to this fund by the public as the only means of repayment. During the existence of th.6 corporation it is the sole property of the corporation, and can be applied only according to its charter; that is, as a fund for the payment of its debts, upon the security of which it may discount and circulate notes. Why, otherwise, is any capital stock required by our charters? It the stock may, the next day after it is paid, be withdrawn by the stockholders without payment of the debts of the corporation, why is its amount so studiously provided for, and its payment by the stockholders so diligently required? To me this point appears so plain, upon principles of law, as well as common sense, that I can not be brought into any doubt that the charters oí our banks make the capital •stock a trust fund for the payment of all the debts of the corporation. The bill holders and other creditors have the first claim upon it; •and the stockholders have no rights until all the other creditors are satisfied. They have the full benefit of all the profits made by the establishment, and can not take any portion of its funds until all the other claims upon it are extinguished. Their rights are not to the capital stock, but to the residuum after all the demands upon it are paid. On the dissolution of the corporation, the bill holders and stockholder's have each equitable claims; but those of the bill holders possess, as I conceive, a prior exclusive equity. •The same doctrine has been recognized by the Supreme Court of Massachusetts. 15 Mass. 505, 517, 522; 16 Mass. 9, 15. If I am *150 right in this, the principal difficulty *in this cause is overcome. If the capital stock is a trust fund, then it may be followed by the creditors into the hands of any person having knowledge of the trust attaching to it. As to the stockholders themselves, there can be no pretense to say that, both in law and fact, they are not affected with ample notice.” In Gray v. Portland Bank, 3 Mass. 364, Lowell, Judge, considers this kind of corporation as a copartnership; and Sedgwick, Judge, says all the stockholders were partners. Blackstone says, 1 Com. 477, that “ the general duties of all bodies politic may, like those of natural persons, be-reduced to this single one — that of acting up to the end or design, \whatever it be, for which they were created.” I look upon it asolear, that all corporations are trustees for the individuals of which they are composed, and that those who act for the corporation and , conduct its affairs, are trustees for the corporation and can not ap- ) propriate the corporation funds to their individual advantage, to- , gratify their passions or to serve any other purposes than those for j the general interest of the corporation and its creditors. And ' /when a by-law or resolution is adopted for the personal benefit ! of the individuals making it, chancery will control such exercise [ of power. 17 Ves. 315. Lord Redesdale, in Adair v. Shaw, 1 Sch. & Lef. 243, 262, says “trusts are enforced, not only against those-persons who are rightfully possessed of the trust property as trustees, but also against all persons who come into possession* of the property having notice of the trust.” Upon this ground, assets-in the hands of debtors, or misapplied by executors, or where-there is collusion, are often vested in chancery as a trust fund. Chancellor Kent, in Attorney-General v. Utica Insurance Co., 2 Johns. Ch. 389, admits “ that the persons who, from time to time, exercise the corporate power, may, in their character of trustees, bo accountable to this court for a fraudulent breach of trust; and to this plain and ordinary head of equity the jurisdiction of this-court over corporations ought to be confined.” A corporation, being a trustee, is in part the same as an individual. 2 Ves. Jr. 467; 14 Ves. 252, 253; 2 D. & E. 171; 2 Bos. & Pul. 222; 11 East, 566; 4 Barn. & Cress. 461; 19 Johns. 456, 457. If this-^application was on the part of a creditor, properly so called,, there would hardly be a question that this court had jurisdiction. I am not able to discover any good reason why the jurisdiction should be denied to a corpoz-ator against his trustee. The stock *151 holders own the whole fund managed by the directors as their agents and.trustees. Can these agents take fraudulent measures to depress the value of the stock they manage, buy it. up at the reduced price, and then transfer it to the bank at its nominal-value, pocket the avails of the fraud, render the bank insolvent, totally destroy the value of the stock of the remaining stockholders, and claim exemption from legal responsibility? Can they make corrupt bargains to elect directors who will divide the whole funds of the bank among themselves and set their eo-stoekhoiders at defiance? We can not believe the powers of this court so feeble as not to reach a case of such palpable fraud or unequal to the revision of so iniquitous a contract. Upon the case made-in the bill, the complainant’s interest has been destroyed by the acts of his agents fraudulently performed for their own exclusive advantage. Can not this court set aside such acts and place the rights of the complainant and his co-corporators where they would have stood if this fraud not been attempted? Again, if this corporation and directors were trustees and agents of the stockholders, can they not call them to account for the funds placed under their care, and to exhibit the state of the corporate affairs, in order to stay them from totally destroying the whole fund-under their charge; or is it true that these extensive trusts and these trustees are peculiarly exempt from responsibility? We-think they are not.
But it is said this court can not act, because the taking an account, or the restriction of the directors from further fraudulent acts, puts in issue the life of the corporation, and seeks administration of its effects. If that must be the effect of the account,, or the setting aside these fraudulent transfers, the objection is-well taken. An individual can not treat a corporation as dissolved for misfeasance or malfeasance till it has been called upon to answer the direct charge, and the law .has adjudged the forfeiture. 2 Burr. 862. Suppose the account prayed for is had, does the making it put in tissue the life of the corporation, or interrupt the exercise of the corporate functions ? Clearly not. Suppose these transfers of stock should be found fraudulent, as alleged, be set aside, and the money withdrawn from the vaults of the bank through their instrumentality is replaced, would that interrupt the business of the bank or put in issue its life ? So far from it, the restoration of this money improperly withdrawn from the- *152 funds of the bank might impart to the institution new life and vigor. There is a vast amount of capital managed under various acts of incorporation, whose directors are under immense responsibilities to the public and to individual stockholders. It is only necessary to suppose it possible that these agents, like other men, can be unfortunate or dishonest to demonstrate the necessity of fixing a responsibility somewhere, or these agents and trustees will have power at their own will to divide the capital entrusted to their care among themselves, defrauding both creditors and stockholders. The action at law would not afford an adequate remedy. A court of law has no power to restore things fraudulently removed. Its whole power would be exhausted in the assessment of damages against the individual committing the wrong, and the satisfaction of the amount of his property or person, while the fraudulent act would remain operative to the injury of the principal. Besides, the matters charged in the bill load us to suppose a case where to effect a particular fraudulent object, the stock might be so arranged as to elect a board wholly irresponsible in a pecuniary view, and altogether free from restraint. ¥e think this court, in a proper case made, has the jjower to compel an account from bank directors to their stockholders, to restrain them from the gross misapplication of the stock intrusted to them, and to set aside their fraudulent acts, if injurious to their principals-But it is again claimed that this power can not be exercised until the corporation is dissolved by legal means, or the expiration of its charter. If this be true, the power of the court does not extend to the preservation of the property of the individual, or the functions of the corporation from destruction. The chancellor has no power to prevent irreparable injury or waste of his funds; but the corporator must first institute proceedings at law upon *scire facias or quo warranto to repeal or destroy the charter, the veiy thing he desires to preserve. 5 Pet. 673.
The second point remains. Are these defendants properly made parties to this bill? If we are correct in the view we have taken, it would seem to follow, as a necessary consequence almost, that in order to the effectual exercise of the power of the chancellor, he must have all the parties to the fraud before him. The defendants are the bank in its corporate capacity, the director's and stockholder's charged with the fraud. There is a peculiar fitness in bringing them all before the court, that if fraud is found, *153 the whole proceedings may be reviewed and the participants compelled to restore their ill-gotten gain to the coffers of the corporation.
Demurrer overruled.