### SARAH C. HAMILTON, ADM'X, V. HAMILTON COAL CO. ET AL.

1. CORPORATION—ACTION WHERE ACTS ARE DONE IN VIOLATION OF TRUST.

   The property of a corporation is a trust fund for the benefit of its creditors and stockholders, to be used only in the attainment of the objects for which the corporation is created. Its officers are trustees and deal with such funds in their fiduciary capacity. Therefore, a stockholder has the right to bring a suit in equity and ask for the appointment of a receiver where the directors and the officers of the corporation are acting in violation of the trust; and it is not a sufficient defense to the interposition of chancery powers of the court for such officers to say they acted in good faith, especially where there is a favoring of one stockholder or director or a misappropriation of the corporate funds.

2. DISCRIMINATION IN FAVOR OF DIRECTORS.

   The action of four directors, constituting a majority of the board of directors of a corporation, in voting a sum of money upon an alleged indebtedness to one of their number, without whose vote the resolution could not have been passed, and subsequently endeavoring to change certain accounts as stated by a referee, is sufficient to justify the interference of a court of equity and the appointment of a receiver upon petition of a stockholder, to wind up the affairs of the company.

3. WHEN STOCKHOLDER CANNOT SUE INDIVIDUALLY.

   While a corporation is composed of individuals who are natural persons, the combination of such persons in a corporate capacity as an official person is entirely separate and distinct from the individual members thereof. Therefore, where a corporation, being endorser on a note, pays the same, no right of action against the principal or other sureties exists in favor of a stockholder of such corporation individually to recover the money so paid. The rights of such stockholders must be worked out through the corporation.

APPEAL.

FRAZIER, J.

The case of Sarah C. Hamilton, administratrix, against the Hamilton Coal Company et al., is in this court on appeal.

Some considerable time has been spent in the introduction of oral testimony, and a large mass of written or documentary evidence has been submitted. We have spent a great deal of time in the examination of this case. Since, however, we have concluded upon the judgment that we should announce, I have had but little time to arrange or mark out a line of opinion in the case, and I shall endeavor, therefore, to be brief in disposing of the case. Inasmuch as I have not had time to fully digest and state the gist of the cases upon which we rely, I shall read some of the cases themselves.

First. To determine the law: Has the plaintiff, a stockholder of the company, or the administratrix, or a stockholder, or, in other words, has a stockholder the right to bring a suit and ask for the appointment of a receiver, where he claims that the directors and the officers of the company are acting in violation of his interest ?

Second. When will a court of equity thus take an acceptation of the acts and appoint a receiver ?

Third. Had there been such acts upon the part of the officers of this corporation?

As to the first proposition, as to the right of a plaintiff to maintain the action, I shall first refer to Dodge v. Woolsey, 59 U. S. (18 How.) 331, and I shall read but two paragraphs of the syllabus in that case, although the case itself is worthy of reading upon this question.

First: "A stockholder in a corporation has a remedy in chancery against the directors, to prevent them from doing acts which would amount to a violation of the charter, or to prevent any misapplication of their capital or profits which might lessen the value of the shares, if the acts intended to be done, amount to what is called in law a breach of trust or duty."

Second: "So also a stockholder has a remedy against individuals, in whatever character they profess to act, if the subject of complaint is an imputed violation of a corporate franchise, or the denial of a right growing out of it, for which there is not an adequate remedy at law."

The second authority to which I desire to refer is Taylor v. Exporting Co., 5 Ohio 162 [22 Am. Dec. 785]. I will first read the syllabus of the case:

"A stockholder, in an incorporated bank, may sustain a bill in equity against the corporation, the directors and other stockholders, upon allegations of fraudulent practices, depreciating the value of the stock, suspending banking operations, refusing cash payments and withholding dividends; and in such bill the complainant may join individual stockholders with the corporation, may pray for an account of stock and funds, and for restoration of whatever may have been fraudulently withdrawn from the common stock."

And, now, from the opinion of Judge Wright, looking to this question, which appears to be almost elementary:

"Blackstone says (1 Com. 477), that 'the general duties of all bodies politic, may, like those of natural persons, be reduced to this single one: that of acting up to the end or design, whatever it be, for which they were created.'"

Thus ending the quotation from Blackstone.

"I look upon it as clear, that all corporations are trustees for the individuals of which they are composed, and that those who act for the corporation and conduct its affairs are trustees for the corporation, and cannot appropriate the corporation funds to their individual advantage, to gratify their passions, or to serve any other purposes than those for the general interest of the corporation and its creditors. And when a by-law, or resolution is adopted for the personal benefit of the individuals making it, chancery will control such an exercise of power (17 Vesey 315). Lord Redesdale, in Adair v. Shaw (1 Sch. and Lef. 243, 262), says 'trusts are enforced not only against those persons who are rightfully possessed of the trust property, as trustees, but also against all persons who come into possession of the property having notice of the trust.' Upon this ground, assets in the hands of debtors, or misapplied by executors, or where there is collusion, are often vested in chancery as a trust fund. Chancellor Kent, in Attorney General v. Utica Insurance Co. (2 John Ch. 389), admits 'that the persons who, from time to time, exercise the corporate power, may, in their character of trustees, be accountable to this court, for a fraudulent breach of trust; and to this plain and ordinary head of equity the jurisdiction of this court over corporations ought to be confined.' A corporation being a trustee, is in part the same as the individual."

Omitting a portion of the opinion, Judge Wright proceeds:

"But it is said this court cannot act, because the taking an account, or the restriction of the directors from further fraudulent acts, puts in issue the life of the corporation, and seeks administration of its effects. If that must be the effect of the account, or the setting aside these fraudulent transfers, the objection is well taken. An individual cannot treat a corporation as dissolved for misfeasance or malfeasance, till it has been called upon to answer the direct charge, and the law has adjusted the forfeiture. (2 Bur. 862.) Suppose the account prayed for is had, does the making it put in issue the life of the corporation, or interrupt the exercise of the corporate functions? Clearly not. Suppose these transfers of stock should be found fraudulent as alleged, be set aside, and the money withdrawn from the vaults of the bank, through their instrumentality is replaced, would that interrupt the business of the bank or put in issue its life? So far from it, the restoration of this money improperly withdrawn from the funds of the bank might impart to the institution new life and vigor."

I shall not read further from this case.

The next authority upon this branch of the case is a later opinion by our Supreme Court, which is Rouse, Trustee, v. Bank, 46 Ohio St. 493 [22 N. E. Rep. 293; 15 Am. St Rep. 644; 5 L. R. A. 378], but what I desire to read is from the opinion of Judge Williams, on pages 501-2; and it is upon this point that the corporate property is a trust fund and that the officers of the corporation are trustees, and that they deal with those funds in their fiduciary capacity.

Judge Williams says:

"The corporate property is in reality a fund set apart to be used only in the attainment of the objects for which the corporation was created, and it cannot lawfully be diverted to any other purpose. As soon as acquired, it becomes impressed with the character of a trust fund for that purpose, and the shareholder or creditor may interpose to prevent its diversion from the objects of the incorporation, injurious to him. Taylor on Private Corp., Sec. 34.

"The custody and control of the property, and the management of the business of the corporation, are confided to a board of directors chosen by the shareholders. Into the hands of these officers, through whom alone corporations can act, the shareholders surrender their funds, and entrust the management of the affairs and property of the corporation to them. A relation of trust and confidence, therefore, arises between the stockholders and directors of a corporation, out of which grows the duties of the latter, to so administer the trust as will best promote the interests of the former, to pay them their appropriate dividends from time to time, and upon the termination of the corporation, to distribute to them their respective shares of the corporate property, after the payment of its debts and liabilities. These duties are eminently of a fiduciary nature. It is now so well established as to be no longer a subject of controversy, that the relation of trustee and *cestui que trust* subsists between the directors and shareholders. And, since the directors, as such trustees, represent and act for all the shareholders, they cannot lawfully favor any particular shareholder or class of shareholders; but every authority and power possessed by them, must be exercised for the benefit of all alike. Otherwise no corporation could endure. If the directors and officers of a corporation were allowed, in the conduct of the business, and disposition of the property, to favor one or more shareholders to the detriment of the others, the minority would be the prey of the majority: for, it would then be within the power of the majority to combine and elect officers, who in turn should manage the whole business and apply the whole corporate property for the benefit of the majority, and thus practically confiscate the entire property interest of the minority. Corporations would thus become traps for the unwary, and legalized instruments of fraud. The doctrine that the directors are trustees for the shareholders, and for the equal benefit of all, it is obvious, is essential to the existence of corporations."

Then, if we have succeeded by these authorities in establishing the fact to which we arrived, that a stockholder may bring a suit in chancery against the corporation and other stockholders and individuals, and that the officers of a corporation are trustees for the stockholders, then we may proceed with the second proposition to inquire what acts of the trustees or directors, officers of the corporation, might justify the interposition of a suit in equity.

The petition in this case, the defendants, and the argument have taken a wide range. It appeared to be assumed upon the one side, and probably conceded upon the other, that in order that a court of equity should interfere, that there should be actual fraud. Is that true, and is it necessary that the parties should actually intend to defraud, or, in other words, if there be a favoring of one, or a misappropriation of the funds of the corporation, is it sufficient defense to the interposition of the chancery powers of the court to say they acted in good faith?

Let us see. The first case to which I refer is Goodwin v. Canal Co., 18 Ohio St. 169 [98 Am. Dec. 95]. The second proposition of the syllabus says:

"2. As a general rule, the property of a corporation is a trust fund for the benefit of its creditors and stockholders, and they may, in all cases where it has been fraudulently or wrongfully disposed of by the directors, pursue it into the hands of purchasers with notice, and assert their *lien* upon it, or their claims for its value."

Now, coming to the opinion of Judge Welch, commencing on page 182, he says:

"Nothing is better settled in equity than that such a transaction, on the part of a trustee, does not bind the *cestui que trust*. It is equally well settled that the property of a corporation is a trust fund in the hands of its directors, for the benefit of its creditors and stockholders. 2 Story's Eq. 1252; Aberdeen R. R. Co. v. Blakie, 1 McQueen's Rep. 461; Wood v. Dummer, 3 Mason Rep. 309. If it was desired or intended to make such a purchase of the property."

And the point was that the party was one of the directors; was a member of both corporations,—the one selling and the other purchasing.

"If it was desired or intended to make such purchase of the property as would bind the stockholders and creditors of the canal company, *all* of them should have either been consulted or bought out. That would have been the fair way to accomplish the object. To undertake, by getting control of the company, and then, under pretense of acting as *agents and trustees for all* the stockholders and creditors, deliberately to trample under foot the rights of the minority, is rather a sharp practice, and one which a court of equity will never tolerate. A director whose personal interests are adverse to those of the corporation has no right to be or act as a director. As soon as he finds that he has personal interests which are in conflict with those of the company, he ought to resign. No matter if a majority of the stockholders, as well as himself, have personal interests in conflict with those of the company. He does not represent them as *persons*, or represent their *personal* interest. He represents them as *stockholders*, and their interests *as such*. He is trustee for the *company*, and whenever he acts against *its* interests—no matter how much he thereby benefits *foreign* interests of the individual stockholders, or how many of the individual stockholders act with him,— he is guilty of a breach of trust, and a court of equity will set his acts aside, at the instance of stockholders or creditors who are damnified thereby. Any act of the directory by which they intentionally diminish the value of the stock or property of the company is a breach of trust, for which any of the stockholders or creditors may justly complain, although all the other stockholders and creditors are benefited, in some other way, more than they are injured as such."

The only other authority to which I expect to refer is Rolling Stock v. Railroad Co., 34 Ohio St. 459, and I read from the opinion of Judge Boynton, commencing on page 459:

"The question presented by the record arises upon the exception to the charge of the court upon the point of the defendant's right to avoid the contract upon which the action was founded. The rule that an agent or trustee in matters touching his agency, or pertaining to the trust, cannot bind the principal or *cestui que trust* without his consent, by a contract in which the former is adversely interested, rests upon a very satisfactory foundation, and is supported by a great weight of authority. Wade v. Pettibone, 11 Ohio. 57; Morrison v. Thompson, L. R. 9 Q. B. 480; 1 Leading Cases in Eq. 210.

"In Story on Agency, Sec. 210, the rule is said to be founded 'upon the plain and obvious consideration that the principal bargains, in the employment, for the exercise of the disinterested skill, diligence, and zeal of the agent for his own exclusive benefit. It is a confidence necessarily reposed in the agent, that he will act with a sole regard to the

interest of his principal as far as he lawfully may.' And in 2 Kent's Com. 618, the same principal is asserted, in the following language: 'An agent, acting as such, can not take upon himself, at the same time, an incompatible duty. He cannot have an adverse interest or employment. He cannot be both buyer and seller; for this would expose his fiduciary trust to abuse and fraud.' In Bennett, Ex parte, 10 Ves. 393, Lord Eldon, commenting on a sale of the trust property to the trustee, stated the reason of the rule denying the right of the trustee to buy the trust property to be, 'that it would not be safe, with reference to the administration of justice, in the general affairs of the trust, that a trustee should be permitted to purchase; for human infirmity will, in very few instances, permit a man to exert against himself that providence which a vendor ought to exert, in order to sell to the best advantage, and which a purchaser is at liberty to exert for himself, in order to purchase at the lowest price.' The rule which prevents the agent or trustee from acting for himself, in a matter where his interest would conflict with his duty, also prevents him from acting for another whose interest is adverse to that of the principal; and, in all cases where, without the assent of the principal, the agent has assumed to act in such double capacity, the principal may avoid the transaction, at his election."

Now, this point:

"No question of its fairness or unfairness can be raised. The law holds it constructively fraudulent, and voidable at the election of the principal." Citing numerous authorities.

Now, let us briefly turn to the case at bar. During the year 1891, or rather, at the January election for directors in 1891, as provided by the by-laws, six directors were elected; five of them qualified; one, Henry Hamilton, by reason of sickness, shortly after dying, did not qualify. As was stated and claimed by counsel in argument, it requires four to constitute a majority of the board. At the meeting of the board on Saturday, August 1, 1891, page 57 of the record, which was offered in evidence, it appears that there was present L. M. Dennison, D. G. Dennison, R. C. Rice and C. W. Dennison;. Price, the other director, being absent. And, of course, Hamilton being dead, and his place not being filled, the directory consisted of four members. The following resolution was adopted at that meeting:

"It appearing that in accordance with a resolution passed by this board May 6, 1884 (See page 23 of this record), divers sums of money belonging to this corporation have been from time to time used and applied in the payment of the debts of the Hamilton Coal Company, a copartnership wherein the principal stockholders of this corporation, except L. M. Dennison, are equally interested and liable; and it also appearing that said payments were made under the authority of the resolution referred to, but without the formal action, and record thereof, of this board; and that said L. M. Dennison is equally interested with the three stockholders in the funds of this corporation, for whose benefits such payments have been made; such benefits expressly appear in the redemption of a note of $17,000, given to the Hubbard Bank in 1878, and subsequent interest paid, which, collectively, were paid from funds of the copartnership and corporation, and that an amount equal to the one-third of said payments, and interest thereon, was admitted, and is in the nature of a debt due said L. M. Dennison.

"It is, therefore, on motion, ordered that all such payments, a list thereof, is here appended, stand approved, and that the sum of $7,500 be

now paid said L. M. Dennison to apply upon the amount necessary to make him equal with the other said stockholder, viz., Henry Hamilton, and so forth."

"Which is carried: Ayes, all; nays, none."

Without the vote of L. M. Dennison the resolution could not have been carried. He voted substantially to pay himself that sum.

On page 127 of the record, there is reference to two matters: First. It appears that there was present before the board Mr. Northway, who it is said was attorney for the company, and also Mr. Cole, who was present on a request of the board, and undertook to explain in his report as referee the finding of $3,457, cash on hand and in bank March 1, 1884, but failed to show satisfactory figures. This question was continued to future meeting. Now, that is January 30.

February 6, the rest of the page that was offered in evidence: Board in session; present, the three Dennisons and Rice. Mr. Cole reported that his recollection was that the $3,457 was the amount borrowed of the First National Bank of Warren at the commencement of business March 1, 1884. On inquiring of said bank it is found that the amount of that note was $3,553.39, and the date of the note April 17, 1884. Now, then, on motion, it is ordered that L. M. Dennison be paid $2,238.37, balance due on account. Ayes, all; nays, none.

L. M. Denison testifies in regard to these payments in his oral testimony to the payment of the $7,500 and to the $2,200 subsequently paid upon his account.

Also, there is a resolution looking to the matter of David G. Dennison, and a payment upon the part of the directors of this corporation in order to relieve him of an amount found due, by the report of the referee, Cole.

As is said, it appears from the record in the case in which Mr. Cole acted as referee, that that, as it originally commenced, was properly an action for the settlement of the accounts of this corporation and the distribution of its funds.

In the account attached, and there is a statement attached, and among the statements attached is this: "By an amount and interest earned, for a compensation for money used by the stockholders named before, to-wit: A. K. Price, Henry Hamilton, D. G. Dennison, on April 13, 1879, these said persons owed the Hubbard Bank discount on their notes: Amount of notes $12,750. Amount of discount, $706.47; new note was given for this discount and carried along by the bank until $62.75 interest had accumulated, and then paid from the company's funds; amount $769.19. One-third of each debt belonged to L. M. Dennison."

Now, that is evidently a miscalculation. It would only be one-fourth of the amount, and there appears to have been crowded in, every once in a while, in this case, the idea that because there was three taken out, that one-third of the amount was due to L. M. Dennison.

But one other remark and then I shall close. We are asked to have this cross-petition set down for trial. If there was no claim in the cross-petition which would constitute a separate cause of action in favor of Lemuel M. Dennison, then it would be error for us to set it down. There appears to exist, and I do not know whether I can make it plain or not, as we think, an error in the minds at least of the parties to this suit in supposing that because this corporation, The Hamilton Coal Company, as first they claimed, becoming a conditional endorser for Price,

Hamilton v. Coal Co.

and others, that therefore and because the Hamilton Coal Company has paid that endorsement, that Lemuel Dennison has a right to maintain an action against the coal company or against Price and others.

It should be remembered that whilst a corporation is composed of individuals who are natural persons, the combination of these persons in a corporate capacity as an official person, is entirely separate and distinct from individual members of the corporation. For instance: Instead of the Hamilton Coal Company being the endorser of these notes, suppose it had been John Stiles, and John Stiles had paid the money, then John Stiles would have to sue A. K. Price and others to recover money which he paid for their use. L. M. Dennison would have no right to sue them. His rights must be worked out through the corporation, and because of that fact, we should not set them down, but because of the two facts,—and we place it upon those two foundations alone; that is, the payment, and vote by the stockholders to pay Lemuel M. Dennison the two sums of $7,500, and of $2,238.37; and because of the directors, and he participating, they had endeavored to change the accounts as stated by the referee, Cole, in regard to D. G. Dennison, we think there has been such action upon the part of these trustees as called upon the court of equity to interfere, and for that reason a receiver may be appointed in the view of winding up the affairs of the company.

One remark, however, and that is merely in answer to a suggestion made in argument, and probably in the petition too in this case they asked that Lemuel M. Dennison be ordered to pay back this money or to pay it into the hands of a receiver. We are not disposed in advance to lay down the duties of the receiver. If the receiver when appointed thinks it necessary, either because the funds would be exhausted, or because he thinks that the funds might not be recovered, and it was necessary for him to proceed against Lemuel M. Dennison, then he can do so; but if there be sufficient funds and the receiver would be satisfied to take the credit of Lemuel M. Dennison, this court should not in advance, from any thing that has been shown in this testimony, make any directions in that regard.

There are many other things we might refer to, but it would be wholly unnecessary.