STATE, *ex rel., v.* CHILHOWEE WOOLEN MILLS COMPANY
*et al.*

(*Knoxville.*   September Term, 1905.)

1. **CORPORATIONS.** Surrender of charter and dissolution of corporation by a majority of the stockholders, when.

A majority of the stockholders in a private business corporation may voluntarily surrender the charter, and abandon, discontinue, and dissolve the corporation upon terms of equality to all stockholders over the protest of the minority stockholders before the corporation had purchased any property, incurred any debts, or accomplished anything more than a temporary organization, and where it appears that the stockholders would not be materially prejudiced or financially injured by the dissolution and discontinuance, except as to prospective and speculative profits; and the dissolution will be decreed by the court in a proper suit for that purpose in order to avoid future complications and possible liabilities.

Code cited and construed: Secs. 5165, 5181 (S.); secs. 4146, 4162 (M. & V.); secs. 3409, 3425 (T. & S. and 1858).

Cases cited and approved: Parker v. Hotel Co., 96 Tenn., 252; Treadwell v. Manufacturing Co., 7 Gray, 393; Hancock v. Holbrook (C. C.), 9 Fed., 353; Trisconi v. Winship, 43 La. Ann., 45; Slee v. Bloom, 19 Johns., 456; Hitch v. Hawley, 132 N. Y., 221.

2. **SAME.** Same. Surrender of charter and dissolution is not rendered void as a combination because induced by a competing corporation, when.

The action of a majority of the stockholders in surrendering the corporation's charter as appears in the first headnote is not prohibited and rendered void by the statute (Acts 1903, ch. 140) declaring unlawful and void all arrangements, agreements,

State, ex rel., v. Woolen Mills Co.

trusts, or combinations to lessen full and free competition in the manufacture or sale of articles of domestic raw material, where there was no arrangement between the two corporations, but the old corporation proposed to increase its capital stock, enlarge its plant, and allow all the stockholders in the new corporation to take the new stock upon certain terms of equality, all of which was done for the purpose of preventing the new corporation from going into active business. (*Post, p.* 277.)

Acts cited and construed: 1903, ch. 140.

3. **SAME. Same. Voting stock by proxy is questionable, but action is ratified by stockholders joining in suit asking for the same action by the court.**

The practice and custom of voting shares of stock by proxy is almost universal, unless it is in some way expressly prohibited, but whether the law authorizes such proxy voting or not, where a majority of the stockholders have ratified the action so taken with the aid of proxy votes by joining in the suit and making the request for a dissolution of the corporation as voted for by the stockholders and their proxies representing a majority of the stock, the point raised is a merely technical one, and will not be available. (*Post, pp.* 277, 278.)

FROM McMINN.

Appeal from the Chancery Court of McMinn County.—
T. M. M'CONNELL, Chancellor.

BURKETT, MANSFIELD & MILLER, for complainants.

PRITCHARD & SIZER, ALLEN & IVINS, and E. B. MADISON, for defendants.

MR. JUSTICE WILKES delivered the opinion of the Court.

This is a bill in the name of the State, on the relation of the majority of the stockholders in the Chilhowee Woolen Mills Company, against the corporation and the minority of its stockholders, to have the court adjudicate and decree that the corporation has surrendered and forfeited its charter rights, and that it be dissolved. The corporation is a domestic one; the amount of stock subscribed for being $48,600, or 486 shares. Of these complainants own 272 and the defendants 184 shares.

Defendants resist the right of complainants to enforce the surrender of the charter and a dissolution of the corporation.

The chancellor held that complainants were not entled to the relief sought, and dismissed their bill, the court of chancery appeals reversed the decree of the chancellor and declared the corporation dissolved and its charter rights surrendered, and defendants have appealed to this court.

The material facts found by the court of chancery appeals are: That the corporation was chartered and organized in April, 1904, under the general incorporation acts of the state of Tennessee, to engage in the business of manufacturing woolen, cotton, and mixed fabrics. The capital stock was fixed at $50,000, but *bona fide* subscriptions were obtained to only the amount of $48,600. The stockholders held a meeting, organized, and elected a board of seven directors, to serve for a term of twelve

months, and the directors were instructed to proceed as
expeditiously as possible to carry on the business for
which the corporation was chartered. The election of
permanent directors was delayed until the stockholders
should adopt a code of by-laws. Steps were taken to pro-
cure real estate for a site and suitable machinery, and a
call of ten per cent. upon the stock was made. Such
was the status of the new corporation on April 1, 1904.

It appears that previous to this time there was a cor-
poration known as the Athens Woolen Mills, which had
had a very prosperous history, and declared large divi-
dends and accumulated quite a surplus. The managers
of this corporation made overtures to the principal pro-
moters in the new enterprise, the object of which was to
prevent the new corporation from going into active bus-
iness. The scheme was to increase the capital stock of
the old corporation, enlarge its plant, and let in the mem-
bers of the new corporation upon certain terms.

The court of chancery appeals reports that this prop-
osition was to be open to all the stockholders of the new
corporation, with no special privileges to any of them,
so far as the taking of stock was concerned, and that it
was submitted to the stockholders of the new concern,
and a majority of them were willing and anxious to ac-
cept it, but a minority were not. The stockholders in the
new concern thereupon became divided, and considerable
bad feeling was engendered. Whereupon by a majority
vote the stockholders of the new corporation passed a res-

State, ex rel., v. Woolen Mills Co.

olution that the new corporation be abandoned and dis-
solved, to which action the minority protested.

The board of directors passed a similar resolution to
dissolve the corporation, to set aside subscriptions to its
capital stock, and to annul the call that had been made
for any payment to the subscription to the stock, and this
was also passed by a majority vote, and over the protest
of the minority.

That court reports that it was evidently the purpose
of the people who owned and controlled the Athens
Woolen Mills to stop further proceedings of the new en-
terprise, and specially to secure and retain the services
of Messrs. Blizzard and Mahary, to whom was due in a
very large extent the success of the old company, with
that company. These gentlemen did decide to go with
the old company and abandon the enterprise.

So far as the motives of the two factions are concerned,
the court of chancery appeals report that each was act-
uated by what it considered to be its best interest pecuni-
arily, that the old concern was a very profitable one, and
that the prospect of the new was very good, and that the
chief object of the Athens Woolen Mill Company, in its
opposition to the new enterprise, was that it might re-
tain the services of Messrs. Blizzard and Mahary.

Both parties seemed to have viewed the matter from
their pecuniary interests.

Our statutes provide for the dissolution of a corpor-
ation by the following, among other provisions (Shan-
non's Code, section 5165), is in this language:

State, ex rel., v. Woolen Mills Co.

"An action lies under the provisions of this chapter in the name of the State against a person or corporation offending in the following cases: . . .  (4) or, if being incorporated, they do or omit acts which amount to a surrender or forfeiture of their rights and privileges of a corporation; (5) or exercise powers not conferred by law; (6) or fail to exercise powers conferred by law and essential to corporate existence."

Section 5181 provides:

"That if it be adjudged that a defendant corporation has by neglect, nonuser, abuse or surrender forfeited its corporate rights, judgment will be rendered that the defendant be altogether excluded from such rights and be dissolved."

These sections appear to refer more particularly to involuntary proceedings against a corporation arising out of some abuse, neglect or dereliction of duty, but they are broad enough to embrace also cases of voluntary surrender of a charter by the stockholders, and this was so held in the case of *Parker* v. *Hotel Company,* 96 Tenn., 252, 34 S. W., 209, 31 L. R. A., 706.

In this case we have a deliberate and formal surrender of the charter under a resolution passed by a majority of the stockholders, a similar resolution passed by a majority of the directors, all ratified and affirmed in the bringing of this bill.

If the application in this case was made on behalf of all the stockholders to have the charter surrendered and the corporation dissolved, we think that there can be no

doubt that the relief would be granted, and the question remains whether it should be done by a majority of the stockholders, over the wish of the minority, where no business has been done by the corporation and no debts or obligations have been incurred and no liabilities have accrued.

It would seem to be an anomaly that the minority of the stockholders, under such circumstances and under such a status of affairs, could compel the majority to go forward with the organization and operation of the corporation, when the majority were opposed to such action, and could, if they saw proper, block and prevent the success of the enterprise.

This, of course, relates alone to private corporations, and not to public or quasi public corporations, nor to charitable or eleemosynary corporations, in which the public has an interest.

The court, we think, could not under such circumstances take charge of the corporation and manage it through a receiver or otherwise, nor can it grant the power to the minority to control the majority.

We do not mean to hold that a majority of the stockholders can, in bad faith, put an end to the existence of a corporation, and dissolve it, to the prejudice of the property rights of the minority.

We think there can be no doubt that the majority of the stockholders have the right to control the corporation, provided they act in good faith; that is, without

any attempt to take advantage of the minority for the benefit of the majority.

The true rule, as we understand it, is laid down in Cook on Corporations, sections 629 and 670.

In section 629 it is said:

"It is an unquestioned rule that stockholders by unanimous consent may effect a dissolution of a corporation by a surrender of the corporate franchise. Greater difficulty is found in determining whether a majority of the stockholders may dissolve the corporation. It has been held that the majority in interest in a corporation may dissolve it by a voluntary surrender of its franchises, even though a minority of the stockholders are opposed to its dissolution"—citing *Treadwell* v. *Salisbury Manufacturing Company,* 7 Gray, 393, 66 Am. Dec., 490, *Hancock* v. *Holbrook* (C. C.), 9 Fed., 353, and other cases.

He states, however, a number of instances in which this can not be done, but he states the general principle to be that a majority of the stockholders may, where it can be done without bad faith to the minority, seek and obtain a dissolution of the corporation.

In all his excepted cases we find, however, some element of bad faith or want of good faith, or the fact of an established business or existing liabilities, where the dissolution would be practically a fraud upon the dissenting minority stockholders.

The doctrine which we approve has been virtually announced by this court heretofore in the case of *Parker* v.

115 Tenn.—18

*Bethel Hotel Company,* 96 Tenn., 252, 34 S. W., 209, 31
L. R. A., 706, where it is said by Special Judge Bradford:
"An ordinary business corporation, where its charter
specifies no definite time for its continuance, may sell
its property and wind up its affairs whenever a majority
of the stockholders may deem it advisable"—citing cases.

In the case of *Treadwell* v. *Salisbury Manufacturing
Company,* supra, the supreme court of Massachusetts
says: "We entertain no doubt of the right of a corpora-
tion, established solely for trading and manufacturing
purposes, by a vote of a majority of its stockholders, to
wind up its affairs and close its business, if, in the ex-
ercise of sound discretion, they deem it expedient so to
do."

At common law, the right of corporations, acting by
a majority of their stockholders to sell their property is
absolute and it is not limited as to object, circumstances
or quantity. He proceeds to state that there are many
exceptions to the rule, as in cases of quasi public corpora-
tions and charitable and religious corporations, in which
the community has some interest.

To the same effect, see *Trisconi* v. *Winship,* 43 La.
Ann., 45, 9 South., 29, 26 Am. St. Rep., 175, and *Slee* v.
*Bloom,* 19 Johns., 456, 10 Am. Dec., 273.

Thompson on Corporations, vol. 5, section 6686, says,
after commenting on public and quasi public corpora-
tions and corporations of an ideal kind, that "the same
reasons do not apply in case of a corporation of a purely
private nature, as in its business the state has no special

interest.  It is accordingly held that corporations of a private nature, established solely for trading or manufacturing purposes, may by a vote of a majority of their members, against the protest of the minority, wind up their affairs, and close their business, if, in the exercise of sound discretion, they deem it expedient to do so, and may sell the whole of their property to a new corporation taking payment in shares of the new corporation, to be distributed among the stockholders of the old corporation who are willing to take them."

The same author says (section 6694): "When we consider that it is not only competent for a majority of the stockholders, but also for a quorum of the directors, to assign all property of the corporation to a trustee for the payment of its debts, an act which in itself is substantially a dissolution of the corporation and a winding up of its affairs, the conclusion that it is within the power of the majority to take action to wind up any business corporation, in the absence of a statutory prohibition seems unavoidable."

To the same effect, see *Hitch* v. *Hawley*, 132 N. Y., 221, 30 N. E., 404, where it is said: "We think that when the interests of the corporation are so discordant as to prevent efficient management, and a large majority of both trustees and members wish to wind up its affairs, a dissolution thereof would be beneficial to the interests of its stockholders, because the object of its corporate existence cannot be attained."

While this is a general rule which we think appli-

cable in all save the excepted cases which we have mentioned, it is peculiarly applicable under the facts of the present case, where the organization and operation of a corporation has not so far progressed that any of its stockholders would be materially prejudiced or financially injured by its dissolution and discontinuance, except as to prospective profits, which, at most, are speculative, and depend upon a harmonious and successful management of the business.

Here it is true there had been an incomplete organization, stock had been subscribed, temporary officers had been elected, and a scheme for future management, to some extent, had been devised, but no property had been bought, no liability had been incurred, except as between the stockholders, arising out of their subscription, no good will had been created, and, in short, nothing tangible had been accomplished.

Under such a status of affairs the majority decided to abandon, to discontinue, and dissolve upon terms which they deemed advantageous, and which were offered alike to the majority and minority.

A difference arose between the majority and minority, and a sharp controversy and divergence of views took place, bitterness of feeling was engendered, so that even the future success of the enterprise became problematic, and this was rendered still more acute by the withdrawal of Blizzard and Mahary from the new organization.

While the majority acted as they evidently thought in their own interest, they did not intend thereby to preju-

State, ex rel., v. Woolen Mills Co.

dice the rights of the minority, but tendered to them the same benefits which they themselves were to receive.

The court of chancery appeals finds that there was, in fact, no fraud or bad faith on the part of the majority towards the minority in discontinuing and abandoning the enterprise.

In such case we think there can be no question of the right of the majority to dissolve the corporation, and to have the court decree such dissolution in order to avoid future complications and possible liabilities.

Nor do we think that the act of 1903 (Laws 1903, p. 268, c. 140), prohibits and renders void the acts of the majority in this case. That act simply declares unlawful and void all arrangements, contracts, agreements, trusts, or combinations between persons or corporations made with the view to lessen, to tend to lessen, full and free competition in the manufacture or sale of articles of domestic raw material.

There was no arrangement here between the two corporations, but it is simply a case where a majority of the stockholders in a new enterprise decided to abandon what in their opinion it would not be wise and profitable for them to continue.

Again it is said that the surrender of the charter in this case was not valid, because a large number of the votes cast in favor of the proposition were cast by those holding proxies, and it is said that there is no law authorizing such votes.

It is said that at common law there was no right to

vote by proxy, and there is no general statute in this State authorizing such votes, and the right is not conferred by the charter of the particular corporation in question.

The charter does provide for an election of officers, by votes cast, either in person or by proxy, and we are aware that the practice and custom of voting shares of stock by proxy is in latter days, at least, almost universal, unless it is in some way expressly prohibited.

But whether this be so or not, the majority have ratified this action by joining in the present suit and making the request for a dissolution of the corporation, so that the point raised is a merely technical one.

It plainly appears that a majority of the stockholders are seeking and asking a dissolution and abandonment of this corporation, and we think that, under the facts, as found by the court of chancery appeals, they are entitled to have the relief they ask.

The decree of the court of chancery appeals is therefore affirmed, and the costs of the appeal will be paid by the defendant minority stockholders. The costs of the court below will be paid as adjudged by that court.